MONTGOMERY v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant.*

1.  **Practice** : JUROR, QUALIFICATION OF. A juror who, in an action for damages against a railroad company, states that he would find against the defendant, if the evidence should be evenly balanced, but upon further inquiry says he has formed or expressed no opinion as to the rights of the parties, and has no prejudice against the defendant, but would find according to the evidence and the instructions of the court, is not, for that reason, disqualified from sitting as a juror in the trial of the cause.

2.  ——— : RAILROADS : KILLING STOCK : INSTRUCTION. In an action against a railroad company for double damages for killing stock, an instruction, that if the stock got upon the track at a place where defendant failed to maintain a lawful fence, or at a necessary farm crossing, where defendant had failed to erect and maintain a gate four and one-half feet high, with a latch or hook, and were killed by defendant's cars, the verdict should be for plaintiff, is defective in not stating that the killing or damage must have been caused by reason of the failure of defendant to so erect and maintain such fence or gate.

*Appeal from Clark Circuit Court.*—HON. BENJAMIN E. TURNER, Judge.

REVERSED.

*Geo. S. Grover* for appellant.

(1) The jury should have been instructed to find for defendant. To render defendant liable in this action there must have been some causal connection shown between the height of the gate and the injury. If the gate had been four and a half feet high and had been blown open the stock would have been killed just the same. *Holman v. Railroad*, 62 Mo. 562; *Alexander v. Railroad*, 76 Mo. 494; *Wallace v. Railroad*, 74 Mo. 594;

*Braxton v. Railroad*, 77 Mo. 455. The injury resulted, not from any failure on the part of defendant to perform a duty imposed on it by law, but because of an unforeseen accident, which the performance of such duty could not have prevented. And where such proof appears, this court has repeatedly held that the demurrer to the evidence should be sustained. *Harrington v. Railroad*, 71 Mo. 384; *Fitterling v. Railroad*, 79 Mo. 504; *Ridenore v. Railroad*, 81 Mo. 227. (2) The instructions given by the court of its own motion were erroneous. The first, second, and fourth instructions given by the court, of its own motion, declared that if the gate in question was not four feet and a half high, then the plaintiff was entitled to recover. The cause of the injury, an unforeseen and unavoidable accident, was thus ignored, and in the form in which these declarations of law were given, the jury must necessarily have found for the plaintiff, as there was no other alternative left to their discretion. (3) Defendant's seventh instruction, refused, declared the exact principle laid down by this court in the following cases: *Clardy v. Railroad*, 73 Mo. 576; *Case v. Railroad*, 75 Mo. 668; *Fitterling v. Railroad*, 79 Mo. 504. (4) The challenged jurymen were incompetent. R. S., sec. 2796; *Railroad v. Adler*, 56 Ill. 344; *Davenport Gas Light and Coke Co. v. Davenport*, 13 Iowa, 229. (5) The court erred in refusing to receive the verdict of the jury and in compelling them to reform it. R. S., sec. 3704; *State ex rel. v. Rombauer*, 44 Mo. 590; *State ex rel. v. Knight*, 46 Mo. 83.

*Wood & Montgomery* for respondent.

(1) The evidence does not disclose how the cattle got upon the defendant's track or right of way, whether through or over the gate, or through or over the fence. The evidence does disclose the fact that defendant's fence was unlawful at the time of the killing, and had

been ever since its construction. Not being enclosed by a lawful fence, the law in substance declares the railroad to be dangerous. As defendants run and maintain their railroad in direct violation of a statute passed for the protection of the lives and property of the people, plaintiff will not be required to show negligence. Defendant's acts constitute negligence *per se:* the law implies it. The instructions of the court were correct and fully declared the law applicable to the case. R. S., 1879, sec. 809 ; *King v. Railroad,* 79 Mo. 328. It appearing from the evidence that defendant had reasonable notice of the defects in the fence prior to the killing, or that sufficient time had elapsed since the construction of the fence to impute notice of defects to defendant, the court would not have been authorized, even under appellant's theory of the law governing the case, in giving appellant's refused instructions. *Gee v. Railroad,* 80 Mo. 233 ; *Clardy v. Railroad,* 73 Mo. 576 ; *Moore v. Railroad,* 73 Mo. 438 ; *Terry v. Railroad,* 77 Mo. 254. The defendant, not having erected such a fence as is required by law, is in no better position than if he had erected no fence at all. *King v. Railroad, supra.* (2) The two challenged jurymen were competent. *Hudson v. Railroad,* 53 Mo. 536 ; *Keegan v. Kavanaugh,* 62 Mo. 230 ; *State ex rel. Goldsoll v. Bank,* 80 Mo. 626.

BLACK, J.—This is a suit for double damages for two cows, killed by the defendant's cars at a farm crossing, where the road passes through plaintiff's lands. The court overruled the defendant's challenge for cause to two jurors. The challenge to each was for substantially the same reason, and the evidence of one only need be given. He made the following statements in answer to questions asked by the defendant and the court:

Q. "I understand you to say, in answer to question propounded, that if in your judgment the evidence in this case, of *Montgomery v. The Wabash, St. Louis &*

*Pacific Railway Company*, was equally balanced, you would be inclined to find against the railroad?"

A. "Yes, sir."

Q. "And that you say your answer is common to all railroads; you would be just as willing to find against the Wabash as against any other road, and if, in your opinion, when you had heard the evidence in this case, it was equally balanced, you would find against the defendant?"

A. "Yes, sir."

Q. (By the court.) "Do you give it as your opinion that, if in trying this case it appears that the evidence is equally balanced, you would be more inclined to find against the railroad than plaintiff? Are you prejudiced against the railroads?"

A. "Yes, sir. I think I would find against the railroad the quickest."

Further answering questions asked by the court, this juryman said: "I have not formed or expressed any opinion as to the rights of the parties in this case. I have never heard of the case. I have no prejudice against the .Wabash, St. Louis and Pacific Railroad Company in particular. I would determine the cause according to the evidence and the instructions of the court. I am not related to the plaintiff. I would be governed by the evidence and the instructions given to the jury by the court."

In *Hudson v. Railroad*, 53 Mo. 536, the jurors were asked, if the evidence in the case should be evenly balanced between the plaintiff, an individual, and defendant, a corporation, which way they would incline to find. They answered they would incline to find for plaintiff. They then, in answer to the court, stated that they thought they could try the case fairly and without prejudice or bias. This court then held there was no error in accepting the jurors, and in so doing remarked:

"In this case the jurors answered the judge, that they could decide the case without partiality or bias, and to take their answers all together it is only shown that they were not lawyers; in fact it is generally understood, that jurors are not informed in reference to where the preponderance of evidence is required, and, therefore, it is usual for attorneys in a cause to ask the court to inform the jury by an instruction upon whom the burden rests to prove the different issues."

In *Keegan v. Kavanaugh et al.*, 62 Mo. 230, the jurors were asked, if, in the event that the testimony was evenly balanced, they might not incline to the side of the plaintiff, wife of the man killed. They answered in the affirmative. The court referred approvingly to the case of *Hudson v. Railroad, supra*, and among other things said, no such questions were authorized, and that counsel should not be allowed to go into such hypothetical assumptions of how the evidence would turn out on the trial, or how the jurors would act in certain contingencies.

1. In the present case the substance of the statements of the juror is, when taken all in all, that if the evidence should be equally balanced he would find against the defendant. But on further answer to questions propounded by the court he said he had not formed or expressed any opinion as to the rights of the parties; that he had no prejudice against defendant in particular, and that he would determine the case according to the evidence, and the instructions of the court. The only thing which shows prejudice is the statement that he would find against defendant if the evidence was equally balanced. Now, how he should find in that event was a question for the court, and not the juror to determine; and he asserts a determination to be guided by the direction of the court. If jurors are asked questions which involve propositions of law they should be told what the law is. They are not to be condemned

because they do not know the rules of law. It is not always practicable for the court to point out where the burden of proof lies, in advance of the evidence. The effort to show that the juror was prejudiced against railroads in general is rather in the form of the examination than in his answers. We see nothing to distinguish this case from the cases before cited. Moreover, some consideration must be given to the finding of the court. The judge had the jurors before him, and, it appears, took pains to fully inform himself as to whether the juror was really biased. That the trial judge occupies a better position than we do to determine such questions calls for no argument to the experienced mind.

2. The cows either got upon the track through or over the gate at the crossing, or over the wire fence along the line of the road. The court, after defining what would be a lawful fence and gate, told the jury that if the cows got upon the track at a place where defendant failed to maintain a lawful fence, or at a necessary farm crossing where the defendant had failed to erect and maintain a gate four and one-half feet high, with a latch or hook, and were killed by defendant's cars, then the verdict should be for plaintiff. The statute makes the defendant liable for double damages done by its cars, etc., to cattle on the road, or by reason of escaping from, or coming upon, the inclosure, "occasioned in either case by a failure to construct or maintain fences." The instruction, it will be seen, does not contain the element that the cattle were killed or damaged by reason of the failure of defendant to maintain a fence or gate of the lawful height, or to have the gate hung with a latch or hook. The evidence is conflicting as to the sufficiency of the fence and gate, and there was some evidence tending to show that the gate had been left open by some one, and for this reason the cattle got on the track and were killed. The instruction should contain the further element before noted so as to submit to

the jury the cause of the damage; and as this was not done, the judgment is reversed and the cause remanded. All concur.