Moses Coppersmith by his next Friend, Appellant, v. The Mound City Railway Company, Respondent.

St. Louis Court of Appeals, November 22, 1892

1. Jurors: DISQUALIFICATION FOR CAUSE. A juror may be disqualified to try a cause upon grounds other than those specially prescribed by statute.

2. ———: ———: REVIEW OF RULING OF TRIAL COURT. The ruling of the trial court upon an objection to a juror for cause, when the ground of disqualification is not one prescribed by statute, is conclusive on appeal, unless it is clearly and manifestly against the weight of the evidence.

3. ———: ———: ———. In this cause one of the jurors testified on his *voir dire* that he was a consulting engineer of the defendant railway company, but he was not shown to have been a regular employe or salaried officer of the defendant; and he and another juror admitted a general prejudice against actions for damages, of which this was one. *Held*, that the evidence was not sufficient to warrant this court in holding erroneous the rulings of the trial court in favor of the competency of both jurors.

4. **Witness, Re-Examination of.** When a witness has been fully examined upon an issue, it is discretionary with the trial court to permit or deny the re-examination of him on matters purely collateral.

5. **Practice, Appellate:** NON-PREJUDICIAL ERROR. The exclusion of evidence, which is material only in regard to the quantum of damages, is not prejudicial when the verdict is against the right of recovery altogether.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*J. F. Merryman* and *C. P. Johnson*, for appellant.

(1) The court erred in overruling plaintiff's challenge to jurors Meier and Messmore on their *voir dire* examination. Revised Statutes, 1889, sec. 6083; *State v. Bank*, 10 Mo. App. 485. It is universally held that the special designation by statute of certain causes of disqualification creates no limitation against others not so designated, which are clearly founded on the demand for an impartial trial. *Chouteau v. Pierre*, 9 Mo. 3; *State v. West*, 69 Mo. 401. The answer of the juror Meier to the last question, "Can you give the case a fair and impartial trial," was: "I think I can with the reservation I gave before," clearly distinguishing the case at bar from *Hudson v. Railroad*, 53 Mo. 536; *Keegan v. Kavanaugh*, 62 Mo. 230; *Montgomery v. Railroad*, 90 Mo. 450. (2) The court erred in excluding the testimony of Dr. E. L. Epperson offered in rebut-

tal. 1 Rice on Evidence, p. 602, and authorities cited. Bouvier defines rebutting evidence: "The term rebutting evidence is more particularly applied to the evidence given by the plaintiff to explain or repel the evidence given by the defendant." The injury of the plaintiff was a material issue in the case at bar. Dr. Frazer was examined on that issue by the defendant. The examination of Dr. Epperson was certainly competent in rebuttal. *Nelson v. United States*, 1 Peters C. C. 236; *Carr v. Moore*, 41 N. H. 131; *Jaspers v. Lano*, 17 Minn. 296, 305. (3) The court erred in giving instruction, numbered 5, for defendant. *First.* It was misleading; *second*, it was not warranted by the evidence, *third*, it was inconsistent with the other instructions given for defendant. Instructions are to be read as a whole; they should be consistent and harmonious. *Nichols v. Jones*, 32 Mo. App. 657; 35 Mo. App. 70; *Stone v. Hunt*, 94 Mo. 375; *Frederick v. Allgaier*, 88 Mo. 598. When two instructions are conflicting, it cannot be told which the jury took for their guide. *State v. Harrell*, 97 Mo. 105.

*G. A. Finkelnburg*, for respondent.

(1) The competency of a juror is a question of fact to be decided by the trial court, and appellate courts will not interfere with the finding of the court below except in extreme cases. *State ex rel. v. Bank*, 80 Mo. 626, 632; *McCarthy v. Railroad*, 92 Mo. 536; *State v. Cunningham*, 100 Mo. 382; *Montgomery v. Railroad*, 90 Mo. 446, 451. (2) It is not every prejudice which renders a juror incompetent; it must be a "disqualifying prejudice" in the legal sense. A general bias against damage suits or against railways does not disqualify a juror. *State v. Bank*, 80 Mo. 626, 633; *McCarthy v. Railroad*, 92 Mo. 536, 539; *State v.*

*Cunningham*, 100 Mo. 382; *State v. Brooks*, 92 Mo. 542. (3) Neither of the jurors in question actually served on the trial of this case. Both of them were peremptorily challenged by the plaintiff and stricken off. It is not claimed or shown by the record that the jurors who served were other than fair and thoroughly impartial men. There is nothing in the record to show that any "error was committed against the appellant materially affecting the merits of the action." Revised Statutes, sec. 2303. The rejection of a competent juryman is no ground for reversal when the jury actually impaneled was a competent and impartial one. *West v. Forrest*, 22 Mo. 344; *O'Brien v. Iron Works*, 7 Mo. App. 257; *Croker v. Schureman*, 7 Mo. App. 358, 361. (4) The objection to juryman, E. D. Meier, was his business relations to the defendant. Our statute has defined what relation to a party to the suit shall disqualify a juror. Revised Statutes, sec. 6083.

ROMBAUER, P. J.—The plaintiff, a boy twelve years of age, endeavoring to mount one of the defendant's electric cars while in motion, fell and received bodily injuries. He brought this action, alleging that the accident was due to the conductor's negligence in carelessly taking hold of him, while the car was in motion, for the purpose of putting him on the car, and then letting go his hold, whereby the plaintiff slipped and fell, and was seriously injured by the rear car. The answer is a general denial and the plea of contributory negligence.

The case was tried by a special jury, and the evidence was conflicting. The plaintiff's evidence tended to show that he was peddling goods, and held a peddling basket filled with goods, two feet long by eighteen inches deep, in one of his hands or on one of his arms; that he approached the train, consisting of two cars, and going at a regular rate of speed, and held up his disengaged

arm; that the conductor, who stood on the rear platform of the first car, took hold of his hand to help him on the car while in motion, but let go his hold, whereby the boy slipped and was struck by the rear car known as the trailer. The defendant's evidence tended to show that the boy was first noticed by the conductor, while trying to mount the front car while in motion, grabbing for the rear platform with his disengaged, and stumbling at the same time; that the conductor immediately gave the signal to stop, and, seeing that the boy was in danger, made a grab for him but could not reach him; that the boy stumbled and fell, and was hit by the rear car before it was brought to a full stop. The jury found a verdict for the defendant.

The errors assigned are the refusal of the court to sustain plaintiff's challenges for cause to two of the jurors, who were afterwards challenged peremptorily by the plaintiff; also the refusal of the court to permit plaintiff to re-examine one of his witnesses in rebuttal, and the giving of an erroneous instruction on behalf of the defendant.

The examination of the two jurors on *voir dire*, as far as the same bears on the question under investigation, was as follows: Edward D. Meier being examined by the plaintiff stated: "*Q.* Have you any prejudice against damage suits of this kind? *A.* That depends somewhat upon the manner in which they are brought. I have no prejudice against damage suits in general.

"*Q.* How do you mean, the 'manner in which they are brought?' *A.* Well, I have known in my own experience damage suits brought against companies, where the evidence was worked up by outside influence which was not the volition of the parties; in such cases I am apt to be prejudiced against them.

"*Q.* You mean attorneys worked them up? *A.* Yes, sir.

"*Q.* If it should turn out the attorney in this case had worked up this suit, or if the suit came to him in a regular legitimate way, would that still continue to influence you? Are there any other reasons outside of what you have given in regard to damage suits or your prejudice against damage suits? *A.* Well, in this particular case I think I ought not to serve on the jury on account of my close relations with Mr. Scullin.

"*Q.* In fact, that is all; you have close relations of a friendly character? *A.* I am his consulting engineer.

"*Q.* That is all you know of? *A.* That's all I know of.

"*Q.* You are consulting engineer on this line of railway? *A.* Yes.

"*Q.* Would that prejudice, would it keep you from giving this case a fair and impartial trial, do you think? *A.* Well, I don't know that it would, but I thought it was a circumstance that you, representing the opposite side, the plaintiff, ought to know of; I thought it my duty to tell you.

"*Q.* That I appreciate; but that would not keep you—because you are the company's consulting engineer—would not prejudice you against the plaintiff; that is one thing; the fact that you are his engineer is another,—does it or does it not? *A.* It does not prejudice me against that plaintiff in particular, but it does incline me very favorably towards Mr. Scullin.

"*Q.* Then you would enter the jury box in regard to this case with a feeling that you could give a fair and impartial trial without any weight to either side at the start? *A.* Well, I believe that I could, but it would be more difficult than in a case where I didn't know the parties, and had no business relations with them.

"*Q.* You say, I understand you, you can give this case a fair and impartial trial? *A.* I think I can, with the reservation I gave you before.

"*Q.* With a reservation? *A.* With the reservation I stated before."

Mr. Messmore, the other juror, being examined by plaintiff, stated: "*Q.* Do you know anything about this case? *A.* Nothing whatever.

"*Q.* Have you any prejudice against damage suits? *A.* I have a very strong prejudice against damage suits."

Being examined by the defendant, he said: "*Q.* Of course, I assume you have no knowledge of the facts in this particular case? *A.* None whatever.

"*Q.* If you were accepted as a juror, sworn as a juror, you hear the evidence, receive your instructions as to the law from the court, don't you think that you would decide that case according to its merits and according to the law as laid down by the judge? *A.* Yes, sir."

Upon his re-examination by the plaintiff, he said: "*Q.* You would go into the jury-box with a prejudice against this plaintiff I understand? *A.* No, sir; not against this plaintiff.

"*Q.* What do you say? *A.* I claim very many damage suits are brought unjustly, that should not be brought; I think very great damage is done to people by reason of wrong-doing in that way.

"*Q.* And does that feeling of yours affect you in regard to this particular case? *A.* None, except I have not heard both sides of it; I heard your statement as to it; I have not heard the other side.

"*Q.* The statement I made was on the side of the plaintiff; you have heard nothing on the side of the company; do you have any prejudice against that case,—you have heard the statement I have made on which this suit is brought,—now do you have a prejudice against that from the statement alone? *A.* No,

sir; because it looks, according to your side of it, very favorable to the boy.

"*Q.* Do you have a prejudice, with that favorable statement, a prejudice against this case? *A.* Not against that case; in general, I think damage suits are wrong; a great many of them.

"*Q.* No prejudice against this particular case? *A.* No, sir.

"*Q.* If you were accepted as a juror in this case you would enter it feeling you can give this plaintiff a fair and impartial trial, notwithstanding you have a prejudice against damage suits in particular? *A.* I will do my duty.

"*Q.* You believe you can lay aside that prejudice? *A.* No, I would feel that prejudice, a strong prejudice, against damage suits as a rule.

"*Q.* I understand you to say, if chosen as a juror in this case with the rights of this plaintiff to consider, also of this defendant, I understand you to say you would enter the jury box with a prejudice against damage suits? *A.* That is my feeling, as a rule.

"*Q.* How would that affect you in arriving at a verdict in this case; do you feel you can give this plaintiff a fair and impartial trial, notwithstanding you have that prejudice? *A.* If he has a good case, makes it strong enough, the testimony on that side, I will decide that way.

"*Q.* The question has nothing to do with damage cases in general; you are summoned to try this particular case. *A.* I know; I have no prejudice in this.

"*Q.* The question is whether you would go into the jury box with your mind quite free, to give a free and impartial trial to this particular case; this has nothing to do with other cases, or cases in general. *A.* I told Mr. Finkelnburg [the defendant's counsel], I could. I can; this may be a just case."

The following propositions bearing upon the question may be regarded as settled: It is essential that all causes as far as practicable should be tried by wholly impartial triers, and, hence, the special designation by statute of certain causes of disqualification creates no limitation against others not so designated. *Chouteau v. Pierre*, 9 Mo. 3; *State to use v. Bank*, 10 Mo. App. 482. But, while the disqualification of a juror under the statute is a pure question of law and is to be reviewed as such, the disqualification of a juror for other causes is a question of fact, and the finding of the trial court thereon is conclusive on appeal, unless it is clearly and manifestly against the weight of the evidence. *State to use v. Bank*, 80 Mo. 626; *McCarthy v. Railroad*, 92 Mo. 536. Few illustrations of this distinction will suffice. In *Chouteau v. Pierre, supra,* which was a suit on part of a slave for freedom, the court refused to permit a question to be put to a juror, whether he felt in conscience bound to find a verdict in favor of the freedom of plaintiff, notwithstanding the law might hold him in slavery, and the refusal was held error. In *State to use v. Bank, supra,* the juror on his examination stated, among other things, that he thought he had a prejudice which would interfere in rendering a just verdict; that he did not think he could give them a fair trial; that, while he had formed no opinion particularly in that case, there was a prejudice that would require a considerable amount of proof or evidence to remove. This court on appeal declined to say whether the retention of the juror was error warranting a reversal, but the supreme court on appeal, speaking through Commissioner MARTIN, held that it was not reversible error. In *Hudson v. Railroad*, 53 Mo. 525, and *Keegan v. Kavanaugh*, 62 Mo. 230, the defendant's counsel asked a number of jurors whether, if the evidence were equally balanced, they would not be inclined

to find for the plaintiff; they all answered that they would, and it was held that challenges for cause to them were properly overruled.   In *Montgomery v. Railroad*, 90 Mo. 446, the court asked one of the jurors what he would do, if the evidence was equally balanced, and whether he was prejudiced against railroads, to which he answered:   "Yes, sir.   I think I would find against the railroad the quickest;" and it was held that overruling a challenge for cause to the juror was not error.   In several of these cases .the court emphasizes the fact, that the trial court is in a better position than the appellate court to judge whether the juror has has really any disqualifying bias, or whether he is really making an effort to escape the burden and responsibility of an unpleasant and tedious trial, which is frequently done; also that his qualification should not be determined by certain catch words or disjointed phrases, but by his whole examination.   It is a matter of common experience that in many classes of cases the securing of a wholly unbiased jury is next to impossible.   The term "consulting engineer," employed by the juror Meier, does not imply that he is an officer or salaried employe of the corporation, but simply that he is a scientific expert consulted by the corporation occasionally.   If the relation of the juror to the corporation was that of a regular employe or salaried officer (which is not even claimed on the argument), the plaintiff could easily have shown .it.   We must conclude, therefore, that there was no error in the court's overruling the plaintiff's challenges for cause to these jurors.

The plaintiff called as a witness the physician who had attended upon him, and who fully testified as to the extent of the plaintiff's injuries.   The defendant called a physician who had examined the boy, and who testified that the injuries were slighter than testified .to by

plaintiff's expert. On his cross-examination this last witness stated that he did not think a physician was necessary in the case longer than two weeks after the accident. The plaintiff's attending physician was called in rebuttal, and the following question put to him by plaintiff's counsel: "I will ask you your opinion as an expert, whether or not that boy would have required any attention, any physician, after the eighth day of October, or if he had been a patient of yours would you have turned him over after the eighth day of October." The court sustained the defendant's objection to the question. There was no error in this for obvious reasons. The witness had been fully examined on the question before, and it was discretionary with the court to permit or deny his re-examination on matters purely collateral. *Adriance v. Arnot*, 31 Mo. 471. The evidence was merely cumulative, and, therefore, not evidence in rebuttal. *Craighead v. Wells*, 21 Mo. 404. The evidence excluded in no way affected plaintiff's right of recovery which is negatived by the verdict of the jury; hence, it in no way affected the result.

The court, at defendant's instance, gave the following instruction, among others, and it is excepted to as erroneous: "You are further instructed that an unsuccessful endeavor on the part of the conductor to prevent the plaintiff from falling (if you find from the evidence that he did make such an endeavor) does not constitute negligence on the part of said conductor, provided you find that, in so doing, the conductor exercised reasonable care to prevent the accident and avert injury as soon as circumstances permitted him to become aware of the danger to which plaintiff was exposing himself."

This instruction is challenged on the ground that it is not supported by any evidence, and that it is in

conflict with other instructions given in behalf of the defendant. The instruction is directed to a hypothesis raised by plaintiff's evidence, and not to one raised by the defendant. It was no error on the part of the court to instruct the jury that, even though they found certain facts according to plaintiff's version, yet the defendant was not liable if its servants exercised reasonable care under the circumstances. There is no legal inconsistency between this and other instructions given for defendant.

Finding no error in the record, the judgment is affirmed. All the judges concur.