Ruschenberg v. Southern Electric Railroad Co.

---

RUSCHENBERG, Appellant, v. SOUTHERN ELEC-TRIC RAILROAD COMPANY.

### Division Two, March 12, 1901.

1. **Negligence:** REMARKS OF MOTORMAN: RES GESTAE. The statement as to the cause of the accident, made by the motorman in charge of the car which killed plaintiff's son, made by him while standing on the street, after having left the car and extricated the body of the deceased child from the wheels, is not competent as a part of the *res gestae,* it being the narrative of a past event.

2. ———: ———: ———: MATERIALITY OF EXCLUDED EVIDENCE. A judgment will not be reversed on the naked refusal of the trial court to permit a witness to testify what the motorman said soon after the accident. Counsel must state to the court at the time, what he proposes to prove by the witness, and thus advise the court of its materiality.

3. ———: SKILL REQUIRED: FORM OF QUESTION. An expert witness was asked what means he would have used to stop the car in the shortest time and space possible. The court ruled the question improper. *Held,* not error. The question should have been, Within what time and space would a car like the one which ran over the child have been stopped by a reasonably skillful motorman, after the motorman discovered, or might have by reasonable care discovered, the child in danger, with due regard to the safety of the passengers on the car?

4. **Statutory Construction:** GENERAL AND SPECIAL PROVISIONS: EX-CEPTIONS: REPEAL. When there are two acts or charter provisions or ordinances, one of which is special and particular and certainly includes the matter in question, and the other general, and such that if standing alone it would include the same matter and thus conflict with the special act, the special act must be taken as intended to constitute an exception to the general act, and not a repeal; and especially is this the law when such general and special acts are cotemporaneous.

5. ———: SPEED OF CARS: CONFLICT IN GENERAL AND SPECIAL ORDI-NANCES: CHARTER PROVISION. The city charter provided that "no special or general ordinance which is in conflict or inconsistent with general ordinances of prior date shall be valid or effectual until such prior ordinance or the conflicting part thereof is repealed by express terms." The general ordinance provided that "no car shall be drawn at a greater rate of speed than eight miles per hour," and the special ordinance, without repealing such general ordinance, authorized the defendant company to run its cars along the street where the accident occurred at a speed not greater than fifteen miles per hour. *Held*, for the reasons given in syllabus 4, that this special ordinance is not void because it did not in express words repeal the prior general ordinance, and hence the court did not err in instructing the jury that defendant company was entitled to operate its cars at a speed of fifteen miles per hour.

6. ———: ———: ———: TWO CHARTER PROVISIONS ON SAME SUBJECT. One charter provision stated that no ordinance should be valid which did not by express terms repeal a prior conflicting ordinance, but another provision gave the municipal assembly authority to control and regulate the t: .e and manner of running street cars. *Held*, that these two provisions of the charter must be construed together and when that is done, it will not be held that a special ordinance (its franchise) which gave defendant company authority to run its cars at the point where the accident occurred at a rate of fifteen miles an hour, is void, because it did not in express terms repeal a prior general ordinance which fixed the maximum rate of speed for all street cars at eight miles.

7. **Negligence:** CHILD SIX YEARS OLD: "LOOK AND LISTEN." Plaintiff's instruction, as asked, required a child six years old, to "have exercised such a degree of care and prudence in crossing said tracks as an ordinarily careful and prudent person of his age and intelligence would have exercised under like circumstances."

The court changed this instruction so as to require the child "to have exercised such a degree of care and prudence in crossing said tracks and in looking and listening for the car," etc. *Held,* it was not error to make this change in the instruction. Whether a boy of like age and intelligence would look and listen before going on a track immediately before an approaching car, was a question under the evidence for the jury.

8. **Juror:** PREJUDICE: DISCRETION OF TRIAL COURT. The finding of the trial court that certain jurors were not disqualified because of their prejudice against personal damage suits, will not be disturbed, unless such finding is clearly against the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Young & Altheimer* and *Wm. H. Reynolds* for appellant.

(1) Witness Reeves ought to have been allowed to testify to the declaration of the motorman made immediately after the car had stopped, and before the boy was taken from under the car, and while efforts were being made to get him out from under the car, as to the exact cause of the injury. Such a declaration was admissible as a part of the *res gestae.* 1 Greenleaf on Evidence, sec. 108; 21 Am. and Eng. Ency. of Law, 99; Railroad v. Coyle, 57 Pa. St. 402; Leahy v. Railroad, 97 Mo. 172. One of the main issues in this case was whether the car which struck deceased was stopped in the shortest time and space possible according to the city ordinance read in evidence. Appellant was not permitted to show what means should have been used to have stopped said car in the shortest time and space possible in compliance with said ordinance. This was manifestly erroneous. (2) The regulation of the speed of street cars in the city of St. Louis can only be done by ordinance. Art. 3, sec. 26, subdiv. 5, charter, R. S.

1889, p. 2097; Chicago v. Rumpff, 45 Ill. 90. A city can not accomplish by an order that which, under its charter, can be done only by an ordinance. Trenton v. Coyle, 107 Mo. 193. A contract in the nature of an invalid ordinance, although supported by a valuable consideration, is also invalid. Waterworks v. Lamar, 128 Mo. 188. Instruction 8 given by the court on behalf of the defendant, with a slight modification, is clearly erroneous. Art. 3, sec. 28, charter, R. S. 1889, p. 2100; R. S. 1889, secs. 1186-1187; State ex rel. v. Schweickardt, 109 Mo. 507; LaMoine v. St. Louis, 72 Mo. 404; St. Louis v. Wetzel, 130 Mo. 600; State v. Chambers, 70 Mo. 627; Barber Asphalt Pav. Co. v. Hunt, 100 Mo. 27; Schumacher v. St. Louis, 3 Mo. App. 279. (3) Instructions given by the court upon its own motion as to the duty of the deceased, misled the jury and imposed a higher duty upon the deceased than that warranted by sound law. Spillane v. Railroad, 135 Mo. 414. (4) Instruction 1, asked for by plaintiff and refused by the court, should have been given to the jury. Spillane v. Railroad, 135 Mo. 414. Instructions 2, 4, 6, 7 and 8, asked for by plaintiff, and refused by the court should have been read to the jury. Art. 3, sec. 28, charter, R. S. 1889, p. 2100. Sec. 1275, subdiv. 10 R. O. 1892, provides that "No car shall be drawn at a greater rate of speed than 8 miles per hour." (5) Jurors Rufus J. Lackland Jr., and Nathaniel T. Lane were incompetent. State to use v. Bank, 10 Mo. App. 482; s. c., 80 Mo. 626; R. S. 1889, sec. 6083; Mahoney v. Railroad, 108 Mo. 197; Coppersmith v. Railroad, 51 Mo. App. 365.

*Lubke & Muench* for respondent.

(1) The finding of the trial judge as to the qualification of a juror, when supported by evidence, will not be re-

viewed on appeal.    This has always been and still is the ruling of the appellate courts in such cases.    McCarthy v. Railroad, 92 Mo. 536; State v. Cunningham, 100 Mo. 382; State ex rel. v. Bank, 80 Mo. 633; Mahany v. Railroad, 108 Mo. 199; Coppersmith v. Railroad, 51 Mo. App. 365.    (2)    The appellant insists that the declarations, which the motorman is supposed to have made at the time stated by the witness, were part of the *res gestae;* and his counsel rely upon the decision of this court in Leahy v. Railroad, 97 Mo. 172, to support their contention.    Counsel are again unfortunate in making their citation, because this court in the Leahy case very materially contracted the rule which had been theretofore followed in this State in admitting declarations as being of the *res gestae.*    It reversed the action of the trial court in admitting declarations of the person injured while he was being carried away from the scene of the accident, although the earlier decision of the Supreme Court in Harriman v. Stowe, 57 Mo. 93, rendered these declarations clearly admissible.    The court in the Leahy case reaffirmed its ruling in Adams v. Railroad, 74 Mo. 553, which fits precisely to the case at bar.    Senn v. Railroad, 108 Mo. 142; Devlin v. Railroad, 87 Mo. 545; Barker v. Railroad, 126 Mo. 143; State v. Rider, 95 Mo. 474; Bevis v. Railroad, 26 Mo. App. 22.    (3)    Meyers, after having been fully interrogated as to how and in what distance an electric car, going at the rate of eight miles per hour, could be stopped, was asked, "What means would you employ, as a motorman, to stop a car in the shortest time and space possible?"    Defendant's counsel objected to this question as incompetent and leading.    Of course, defendant company never contracted, or in any manner undertook, either expressly or by implication, to run its cars or to stop them according to the rules which this witness might lay down.    Gutridge v. Railroad, 94 Mo. 468; Longston v. Railroad, 147 Mo. 458.    (4)    Section 28

of art. 3 of the charter, relating to ordinances generally, must be read in connection with all of article 10 of the charter. This article invests the municipal assembly and mayor with full authority and power to contract by ordinance in relation to street railroads accordingly as the growth of the city or other conditions may demand. The charter treats the entire subject specially. Railroad v. Railroad, 105 Mo. 562; Railroad v. Railroad, 105 Mo. 578; Railroad v. Railroad, 132 Mo. 34. It follows, therefore, that section 28 of article 3 of the charter relating to ordinances generally must give way to the article relating specially to "street railroads," and that an ordinance passed in conformity with the latter can not be impaired or destroyed by the former. The familiar rule that "a general prohibition is not inconsistent with a special indulgence, and a special indulgence is not repealed by a general prohibition though the latter is subsequent in time," has application here. Alexander v. St. Louis, 23 Mo. 483; Smith v. Clark County, 54 Mo. 69; State v. Green, 87 Mo. 583; State ex rel. v. Schweickardt, 109 Mo. 496.

GANTT, J.—Plaintiff's son, aged six years and three months, while attempting to cross in front of an electric street car, was killed on defendant's track, on South Broadway in the city of St. Louis, May 21, 1897, and this action was brought to recover the statutory penalty of $5,000.

There was a verdict and a judgment for defendant and plaintiff appeals.

In his second amended petition plaintiff charged that the death of the boy was caused by defendant's car going south; that the motorman failed to keep a proper and vigilant lookout, and failed to exercise ordinary care to stop the car in time to avoid running against the boy; that subdivisions 4 and 10 of General Ordinance 1275 of the Revised Ordinances of the

city of St. Louis of 1892 were then in force, and that thereby the operators of street cars were required to keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles to stop the car in the shortest time and space possible; also that no car should be drawn at a greater speed than eight miles per hour. The petition alleged further that defendant company contracted with the city to obey all the ordinances of the city then or thereafter to be enacted; that the car which caused the death of plaintiff's son was at the time moving faster than eight miles per hour; that the motorman did not stop it in time, after seeing the boy, so as to prevent his death; and that the motors and brakes of the car were defective. Defendant's answer was a general denial and a plea of contributory negligence as to the father, in that he failed to care for the boy properly, and as to the son himself, that, without stopping to look or to listen or proceeding with reasonable caution, he came upon the track and directly in contact with the car, heedlessly and recklessly. Plaintiff's reply was a general denial.

There was no evidence of any defect in the car or its motors or brakes.

The evidence shows that plaintiff is the only surviving parent of Frank Ruschenberg, the deceased boy; that the boy was killed by a car going south on the west track of defendant's street railroad; that the boy was about six years and three months old when he was killed. The boy had never been to school, and was a rather clumsy and not a particularly bright child.

Plaintiff was in the employ of the city fire department, and was required to remain at the engine house all the time, night and day, and the boy was living with an aunt, within one block west of the point where the accident occurred.

On the part of plaintiff the evidence tended to prove that the boy, accompanied by another boy somewhat taller than he was, came out of a saloon on the east side of Broadway, and started diagonally across the street, northwestwardly, toward Haller's house on the opposite side of the street; that the two boys went upon defendant's south-bound track at a point about where a neighborhood crossing intersected the south-bound track, and had almost crossed the same when the car struck him and dragged him about 81 feet before the car was stopped; that no gong or bell was sounded to warn them of the approach of the car; that the car was running at a rate of speed variously estimated at from 12 to 26 miles an hour.

On the part of defendant, the evidence tended to show that north of Itaska street there is a hill and the conductor shut off the current of electricity and the car was running down grade without any power on. He saw the boys coming along by the saloon door; they were sauntering along, coming slowly across the street; going slightly southwest. They were looking at the car. When the car was very near to them one of them started and ran right across in front of the car and the other followed. They were very near to the east rail of the east or the north-bound track when they commenced to run in front of the car. The motorman at once applied his brake and halloed to them, but they ran ahead, one got across, and the deceased was struck and killed. The motorman testified he was not running faster than eight miles an hour.

Mrs. O'Neil, a passenger on the car, testified as follows:

"Q.   Were you in the car going south when this accident occurred?   A. Yes, sir.

"Q.   Where did you get on the car?   A. It was a green car; I must have got on in the city; I was going out to inspect some factories.

"Q.   What is your business?   A. Inspecting factories,

Ruschenberg v. Southern Electric Railroad Co.

where women and children are employed, under the State Labor Commissioner.

"Q. What is your occupation now? A. It is the same.

"Q. Working for the State Labor Commissioner? A. Yes, sir.

"Q. You were in the car when the accident occurred in May last? A. Yes, sir.

"Q. What seat were you occupying? A. The first seat on the left-hand side.

"Q. What was there between your seat and the front of the car to obstruct the view? A. Nothing.

"Q. Was the car open? A. Yes, sir.

"Q. The windows open? A. Yes, sir.

"Q. Do you remember this gentleman here being the motorman in charge of the car? A. Well, I wouldn't say; he does look like him; I thought he had a bigger mustache than that.

"Q. You remember the occurrence? A. Yes, sir.

"Q. Please state where you saw the boys first, and how many of them there were? A. There were two.

"Q. Where did they come from? A. I didn't notice; they came across the street and seemed to be playing in the dust; then they commenced to run diagonally—rather that way—from the car; after they got near the edge of the track they stopped and looked up, and we thought, I thought instantly they were going to get on the track. When I saw them stop I was sure they had stopped; in the meantime the brakeman had thrown on his brake; the little one looked in a different [defiant] way and started, but he was caught.

"Q. Which one looked up? A. The oldest one.

"Q. What was he carrying? A. A little bucket.

"Q. Tin bucket? A. Yes, sir.

"Q. How close were they to the car when the little fel-

low looked up and ran ?  A.  It didn't seem to be more than ten feet.

"Q.  He got over ?  A.  Yes, sir.

"Q.  What did you see the other one do ?  A.  He started after him; he was two feet behind him; he could not run as fast; he was little, and he got on the track when the car struck him.

"Q.  On which side of the track was he when he was hit; you were going south on the west track ?  A.  Yes, sir.

"Q.  Which rail was he nearest to ?  A.  He was on the right, near to the west, liable. to be struck.

"Q.  What did you see the motorman do all this time ? A.  He was trying to stop the car.

"Q.  What did you observe, if anything, in reference to any gong sounding ?  A.  The gong was sounded, certainly, and the man shouted.

"Q.  Who shouted ?  A.  The motorneer.

"Q.  The distance between the front of the car, when the boy started to run, was how much ?  A.  It could not have been over ten feet; it was close and the child looked up in our faces.

"Q.  Which one looked up in defiance ?  A.  The older boy.

"Q.  The one that got over ?  A.  Yes, sir; he was ahead.

"Q.  How far did the car go after it struck the boy ?  A. It didn't seem to me that it went very far; it might have gone farther than it seemed, but it didn't seem to be very far; I couldn't say."

The different assignments of error will be examined in the order of appellant's brief.

I.  During the examination of Edward Reeves, a witness for plaintiff, he was asked by counsel for plaintiff, if he heard the motorman make any statement as to the cause of the acci-

dent after witness reached the car and while the motorman was standing on the street, having left the car to assist in extricating the body of deceased from the wheels. To this question counsel for defendant objected, and the court sustained the objection. In so doing, counsel for plaintiff insists the court erred.

The statement called for was incompetent as a part of the *res gestae.* On its face it sought to elicit a narrative of a past event. It is not pretended that it was an exclamation or statement characterizing the conduct of the motorman pending the accident.

It is the settled law of this State that any statement the motorman might have made at the time indicated is incompetent as an admission of the defendant. [Barker v. Ry. Co., 126 Mo. 143, and Missouri cases there cited.]

In Adams v. Ry. Co., 74 Mo. 553, this court approved Luby v. R. R. Co., 17 N. Y. 133. In that case the defendant was sued for negligently running a railroad car drawn by horses, against the plaintiff, in one of the streets of New York. A police officer was allowed to testify that he arrested the driver directly after the accident, the citizens having stopped the car, and the driver having got outside the crowd which had gathered and on being arrested, assigned as a reason why he did not stop the car, that the brakes were out of order. The Court of Appeals of New York held it error to admit the testimony and observed that "the alleged wrong was complete, and the driver when he made the statement was only endeavoring to account for what he had done." In Adams v. Ry., the fireman on the train remarked to the engineer: "If you had stopped the train when I told you, you would not have killed him," and this court ruled that the statements did not constitute any part of the transaction, but, if admissible at all, would only go to show another fact and were not of themselves facts

to be proved as verbal acts, and reversed the case because they were admitted.

It is not necessary to review the long list of adjudications on this subject.

Courts do not differ materially as to what the doctrine is, but are widely variant in its application.

As applied to this case we think the offer was to prove a narrative of a past occurrence and not a circumstance so connected with the main fact as to characterize the act itself. [Adams v. Ry. Co., 74 Mo. 553; Senn v. Railroad Co., 108 Mo. 142; Devlin v. Raliroad Co., 87 Mo. 545; Barker v. Ry. Co., 126 Mo. 143.]  ·

But there is another and cogent reason why this court should not reverse the case for the exclusion of the answer, and it is this: The case might be reversed on the naked refusal to permit an answer to the question, and on re-trial it might appear the matter elicited was wholly immaterial and incompetent.   The plaintiff should have gone further and stated to the court what he proposed to prove by the witness, and in this way advised this court of its materiality.   [Bank v. Aull, 80 Mo. 199; Jackson v. Hardin, 83 Mo. 175; Lane v. Ry. Co., 132 Mo. 4; State v. Martin, 124 Mo. 514.

II.   Error is predicated, also, on the exclusion of an answer to the witness Meyers to the following question: "What means would you employ as a motorman to stop a car in the shortest time and space possible?"

The witness had testified that he had formerly been employed as motorman for four years on the Franklin avenue car line in St. Louis, but was at the time of the trial a member of the fire department, and that a large-sized double-truck car running down a grade with a fall of one inch and three and one-half hundredths to the one hundred feet, and running at

Vol 161 mo—6

eight miles an hour on a dry track, could be stopped in a distance from forty to forty-five feet by using a brake, and if the slack was taken up could stop it in twenty or twenty-five feet.

After this, he was asked what means he would have used to stop the train in the shortest time and space possible.

The court correctly ruled that the question was improper.

It should have been, within what time and space could a car like this have been stopped by a reasonably skillful motorman, after the motorman discovered, or might have by reasonable care discovered, the plaintiff's son in danger, with due regard to the safety of the passengers on the car?

After the full examination of the witness, however, it is evident no harm resulted from the refusal of the court to permit this question in the form it was propounded.

III.   Plaintiff challenges the eighth instruction given by the court as a modification of the instruction as asked by defendant, to-wit:

"The court also instructs the jury that under the ordinance of the city of St. Louis (number 17693) which has been read in evidence, the defendant company was entitled to operate its cars at a rate of speed not greater than fifteen miles per hour, at the point where the injury occurred of which plaintiff complains; but if from the evidence the jury believe that the defendants servants were at the time of the accident running the car at a speed greater than fifteen miles an hour, they may take such fact (if they believe it to be true) into consideration in determining whether or not the defendant's servants were guilty of negligence as defined in these instructions."

The objection is that section six of ordinance 17693, the ordinance which confers the franchise on the defendant company to lay its tracks upon and operate its cars on certain streets of the city, is void, because it is alleged to be in con-

flict with a prior general ordinance, section 1275, of the Revised Ordinances of the city, 1892, subdivision 10, without repealing said prior ordinance as required by article 3 of section 28 of the city charter.

The tenth subdivision of the said section 1275, Revised Ordinances 1892, provides that "no car shall be drawn at a greater rate of speed than eight miles per hour." Whereas, the franchise granted by the city to the defendant street railroad provides that it is "authorized and permitted to run its cars over and upon that portion of its line from Market street to Russell avenue at a speed not greater than ten miles per hour and between Russell avenue and Catatan street and on Loughborough avenue and Gravis avenue at a speed not greater than fifteen miles per hour."

The provision of the city charter with which this last ordinance is supposed to collide, is section 28 of article 3, which reads as follows: "Every ordinance when passed and approved by the mayor, or when it shall have become a law, shall be sent to the city register and by him shall be numbered, printed, filed and preserved in his office according to ordinance; and no special or general ordinance which is in conflict in or inconsistent with general ordinances of prior date shall be valid or effectual until such prior ordinance or the conflicting part thereof are repealed by express terms.

The point is of much importance, as well to the traveling public as to the companies operating street car lines. In the determination of the question, we start with the presumption in favor of the validity of the ordinance, and before holding the ordinance to be in conflict with a prior general ordinance we must consider the whole of the general ordinance and if possible reconcile the special ordinance granting defendant's franchise with the general ordinance, section 1275, and the charter of the city.

It will be borne in mind that section 28 of article 3 of the charter, is exceedingly general in its terms and applies to all ordinances which may be enacted by the city, but the charter contains another article, to-wit, article 10 which confers upon the city special authority over all street railroads then built or thereafter to be constructed in said city, and the municipal assembly was granted power by ordinance to determine all questions arising with reference to street railroads, whether involving their construction or granting them right of way, or regulating or controlling them after their completion, and the assembly is given the power to regulate the time and manner of running cars, etc.

Is an ordinance passed by the city in strict compliance with article 10 of the charter and fixing a new rate of speed under new and changed conditions, necessarily in conflict with the old ordinance fixing eight miles an hour as the maximum speed for horse cars?

In adjusting these general provisions of the charter we are not called upon to construe them by any rigid technical rule, but must be governed by considerations of reason and justice.

It is obvious that neither the municipal assembly nor the companies obtaining these new franchises to propel cars by electricity, considered that they were repealing the old general ordinance, and we should hesitate before we reach a conclusion which renders all these franchises void.

Granting, now, that the old ordinance, section 1275, is broad enough to cover all street railroads, and that this franchise is inconsistent as to rate of speed with that, so far as the two might both apply to the particular streets on which this road is authorized to run in excess of eight miles, upon a familiar and old rule of construction we are not required to hold it is a repeal and is therefore void because not an express re-

peal, because when there are two acts or charter provisions or ordinances, one of which is special and particular and certainly includes the matter in question, as does article 10 of the charter and ordinance number 17693 in this case, and the other general, which if standing alone would include the same matter and thus conflict with the special act or provision, especially when such general and special acts or provisions are cotemporaneous, the special act must be taken as intended to constitute an exception to the general act or provision, and not a repeal.     [Crane v. Reeder, 22 Mich. loc. cit. 334; State ex rel. Lutfring v. Goetze, 22 Wis. 363; Long v. Culp, 14 Kas. 414; Sutherland on Stat. Cons., sec. 217, and cases cited.]

But again, section 1275 must be read in all its parts, and while it is true that the tenth subdivision of that section prescribes eight miles as the maximum speed, the ninth subdivision requires all street railroad companies to operate their cars according to the provisions of their charter, and since the people of the State have conferred upon the city of St. Louis the power to regulate the speed of these cars and in ordinance 17693 it granted defendant company a franchise without which its charter to run a street car line would be wholly inoperative, the said franchise must be read into and considered as a part of its charter within the meaning of said section 1275, subdivision 9, and when so read, it was obligatory on defendant to conform to its charter or franchise and not to the other provision in the same section requiring it not to run exceeding eight miles an hour.

By this construction we give effect to the whole of said section and not a part only.    As the instruction conformed to the ordinance granting defendant its franchise, it was not erroneous.

IV.   Other instructions are assailed by plaintiff, particularly the modification by the court of plaintiff's first in-

struction, as asked.    That instruction was in these words:

"The court instructs the jury that it was the duty of the said Frank Ruschenberg to have exercised such a degree of care and prudence in crossing said tracks as an ordinarily careful and prudent person of his age and intelligence would have exercised under like circumstances.    And if you believe from the evidence that the said Frank Ruschenberg failed to exercise such a degree of care and prudence in going on or across the tracks, then you should find he was guilty of negligence."

As modified and given by the court this instruction read:

"The court instructs the jury that it was the duty of the said Frank Ruschenberg to have exercised such a degree of care and prudence in crossing said tracks and in looking and listening for the car as an ordinarily careful and prudent boy of like age and intelligence would have exercised under like circumstances.    And if you believe from the evidence that the said Frank Ruschenberg failed to exercise such a degree of care and prudence in going on or crossing the tracks then you should find that he was guilty of negligence."

We see no error in the instruction as given.    After all, the measure of care required was such only as a boy of like age and intelligence would have used under like circumstances. Whether such a boy would look and listen before going on a track immediately before an approaching car was a question under the evidence for the jury.    The instruction as modified is not in conflict with the views expressed in Spillane v. Railroad, 135 Mo. 414.

Plaintiff's instructions 2, 4, 6 and 7 were all erroneous in that they instructed the jury that if the car was run in excess of eight miles an hour, defendant was guilty of negligence, whereas its franchise permitted it to run at this point fifteen miles an hour.

The circuit court gave plaintiff's instruction numbered

3, by which liability was declared against defendant if the servants of defendant failed "to keep a vigilant watch for all persons on foot, especially children, either on the track or moving toward it," and failed, "on the first appearance of danger," to stop defendant's car "in the shortest time and space possible, by reason of which the said Frank Ruschenberg was run over and killed." The court by its own instructions, fully and fairly placed before the jury the common-law rules of liability if the operator of defendant's car was negligent in keeping a proper lookout, or was negligent in stopping the car, or failed to exercise ordinary care after the peril of the boy was known or was discoverable with ordinary care.

V. The next and last assignment is that two of the jurors were incompetent and disqualified themselves on their *voir dire* examination.

They both answered that they were prejudiced against personal damage suits; that there were too many such suits brought; that they knew nothing about, this particular suit; that their prejudice was a general prejudice against such suits; that they knew no reason why they could not try this case fairly and decide it according to the evidence and instructions of the court.

One admitted he would start in with a bias in his mind against such cases, but in answer to the court's question, "Then I understand you to say that your prejudice is merely against damage suits in general; that you have no prejudice whatever against this suit?" he said, "No, sir, not against this case in particular."

Counsel for plaintiff then asked, "Then I understand you to say if the evidence in this case was sufficient to convince you that the plaintiff had a good cause of action, you would give him a verdict?" and he answered, "Yes, sir."

So much depends upon the manner of the juror and his

tone of voice, and the opportunities of the trial judge to see and know the jurors, that it has become the settled practice of this court not to interfere with his finding unless it is manifest he has erred. The competency of a question of fact and the finding of the circuit court will not be disturbed unless clearly against the evidence. [McCarthy v. Ry. Co., 92 Mo. 536; State v. Cunningham, 100 Mo. 382; Mahaney v. Ry. Co., 108 Mo. 199; State ex rel. v. Bank, 80 Mo. 633; Coppersmith v. Ry. Co., 51 Mo. App. 366.] Applying these principles we can not say the circuit court erred in accepting the two jurors in this case.

Having examined all the points assigned as error, and finding no reversible error, the judgment must be and is affirmed. *Sherwood,* P. J., and *Burgess,* J., concur.