## VIRGINIA A. RICHARDSON v. KANSAS CITY RAILWAYS COMPANY, Appellant.

### Division One, June 6, 1921,

1. **JUROR: Prejudice.** Where the juror stated that he did not think the "city got a square deal" in the transaction some years previously in which the defendant railway company had obtained a franchise from the city, but his whole examination shows that he was not satisfied with the franchise agreement, but shows no more, such examination does not show such prejudice as to disqualify him in a personal injury case.

2. ——: ——: **Presumption.** The question of the juror's qualification is to be tried by the court, and not by the juror; but after the court has tried the question, the ruling on appeal is entitled to a presumption of correctness, which is overthrown only when the ruling is clearly against the evidence.

3. ——: ——: **Injury to Juror's Wife.** The mere bald showing by affidavit that the wife of one of the jurors, during the progress of the trial and two days before the unanimous verdict against defendant street railway company in a personal injury case, was injured while a passenger on one of defendant's cars, is not enough to justify an inference of hostility towards defendant. In such a situation, it is significant that at no time before the motion

for a new trial was overruled did defendant inform the trial court of the character of the wife's injury, whether the injury was a serious one or a mere scratch, and whether defendant admitted responsibility.

4. · PLEADING AND PROOF: Necessary Result of Alleged Injury: No Exception. Where the petition alleged that the injury plaintiff received resulted in "the impairment of her mental faculties" her testimony that her injury caused her to be affected with loss of memory is within the allegation. But whether it was or not, if no exception was saved to the refusal of the court to strike out the testimony, it is not reversible error on appeal.

5. PLEADING: Specific Allegation: Instruction. Instructions must be within the pleadings, and an allegation of general negligence is restricted by specifications of particular negligence, and instructions, in such a case, must submit nothing outside the specific charges; and in this case, where an allegation of general negligence was followed by specifications of negligent acts, the instruction was within the rule, and the proof tended to support the specific charges.

6. INSTRUCTION: Contributory Negligence. An instruction requiring the jury to find that at the time of plaintiff's injury she "was seated in the automobile in question and that said truck was standing still on the track ahead of the street car" negatived the defense that the truck backed into the car, and did not ignore said defense.

7. ———: More Than The Law Requires. An instruction is not erroneous because it requires a finding that the law does not require. Where the instruction submitted the case on common law negligence, it is not erroneous because it conjunctively requires a finding pertinent to the humanitarian doctrine.

8. EXCESSIVE VERDICT: $12,000. Plaintiff at the time of her injury was twenty-five years old, strong, healthy and rosy, and had been steadily employed in stores and shops; the truck in which she was sitting was struck heavily by a street car, and she was rendered unconscious; her back, hip and leg suffered severe and extensive bruises and abrasions; one kidney was displaced four or five inches, and the uterus was retroverted and results in painful irritation of the bladder; her mental powers were somewhat affected, she has greatly lost weight, and has become thin, haggard and sallow; an operation may correct the conditions of the displaced organs, but unless so corrected the displacements are permanent. The verdict was for $20,000, and the trial court reduced it to $12,000. *Held*, that it is still too large by $2,000, and is accordingly reduced to $10,000 as a condition of affirmance.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED (*on condition*).

*R. J. Higgins* and *Mont T. Prewitt* for appellant.

(1) The court erred in giving instruction numbered 1 requested by plaintiff. McManamee v. Railway, 135 Mo. 447; Northam v. Railway, 176 S. W. 229; State ex rel. Coal Co. v. Ellison, 270 Mo. 653; Kirkpatrick v. Railway, 211 Mo. 83; Degonia v. Railway, 224 Mo. 589; McGrath v. Railway, 197 Mo. 105; Davidson v. Transit Co., 211 Mo. 361; Roscoe v. Railway, 202 Mo. 588; State ex rel. Natl. Newspaper Assn. v. Ellison, 176 S. W. 11; Hoadland v. Dunham, 186 S. W. 1148; Reyburn v. Railway, 187 Mo. 575; Evans v. Trenton, 112 Mo. 404; McClanahan v. Railway, 147 Mo. App. 411; Knapp v. Dunham, 195 S. W. 1063; Kamoos v. Railway, 202 S. W. 436; Haines v. Railway, 203 S. W. 631. (2) The court erred in refusing to discharge venireman George Hogue, who was not a qualified juror. Vessels v. Light Co., 219 S. W. 85; Theobald v. Transit Co., 191 Mo. 417; Carroll v. United Rys., 157 Mo. App., 264; Gibney v. Transit Co., 204 Mo. 721; Heidbrink v. United Rys., 133 Mo. App. 42; Billmeyer v. Transit Co., 108 Mo. App. 9. (3) The court erred in failing and refusing to grant defendant a new trial for the reason that juror George R. Barker became a disqualified juror during the trial of this cause. Vessels v. Light Co., 219 S. W. 85; Theobald v. Transit Co., 191 Mo. 417; Carroll v. United Rys., 157 Mo. App. 264; Gibney v. Transit Co., 204 Mo. 721; Heidbrink v. United Rys., 133 Mo. App. 42; Billmeyer v. Transit Co., 108 Mo. App. 9. (4) The court erred in permitting incompetent testimony concerning the alleged mental condition of plaintiff. Hall v. Coal Co., 260 Mo. 373; Shafer v. Dunham, 192 Mo. App. 502; Fink v. United Rys., 219 S. W. 680. (5) The court erred in refusing to sustain defendant's motion for a new trial

for all the reasons heretofore assigned and because the
verdict is excessive. Rigg v. C. B. & Q. Ry., 212 S. W.
879; Hulse v. St. Joseph Ry. Co., 214 S. W. 155; Dominick
v. Mining Co., 255 Mo. 467; Stolze v. Transit Co., 188 Mo.
581; Norris v. Railway, 239 Mo. 704; Lyons v. St. Ry.,
253 Mo. 163; Bragg v. St. Ry., 192 Mo. 365; Willits v.
C. B. & Q. Ry., 221 S. W. 65.

*Harry G. Kyle* and *Horace G. Pope* for respondent.

(1) The court did not err in giving Instruction No.
1 requested by plaintiff. Kame v. Railway, 254 Mo. 175;
Lange v. Railway, 208 Mo. 475; Bank v. Robinson, 185
Mo. App. 582; Newton v. Harvey, 202 S. W. 249; Woods
v. Railroad, 188 Mo. 229; Aqua v. Contracting Co., 203 S.
W. 483; Boesel v. Wells Fargo, 260 Mo. 474; Lawbaugh
v. Min. Co., 202 S. W. 619; Meily v. Railroad, 215 Mo. 587;
Tranbarger v. Railroad, 250 Mo. 59; De Rousse v.
West, 200 S. W. 786; Barnard v. Coal Co., 189 Mo. App.
423. (2) The court did not err in refusing to discharge
venireman George Hogue, who was a qualified juror.
McManama v. Railroad, 175 Mo. App. 43; Tawney v. Rys.,
262 Mo. 612; State v. Rasco, 239 Mo. 535, syl. 6; Oakley
v. Richards, 204 S. W. 507; Shore v. Dunham, 178 S. W.
903; Albert v. Railway, 192 Mo. App. 674; State v. Her-
ring, 188 S. W. 172; Joyce v. Railroad, 219 Mo. 344; Gard-
ner v. Railway, 177 S. W. 737. (3) The court did not
err in failing and refusing to grant defendant a new trial
because of defendant's claim that juror George R. Barker
became a disqualified juror during the trial of this cause.
Shafer v. Railways, 201 S. W. 614; Partello v. Railroad,
240 Mo. 133. (4) The court did not permit incompetent
testimony to be given concerning the mental condition of
the plaintiff. Martin v. Railways, 204 S. W. 589. (5)
The court did not err in refusing to grant defendant a
new trial because of its claim that the verdict is excessive.
Perrette v. Kansas City, 162 Mo. 238; Hays v. Railway,
183 Mo. App. 608; Peaslee v. Transfer Co., 120 Minn. 347;

Hurst v. Railroad, 219 S. W. 566; Highfill v. Independence, 189 S. W. 801; Meeker v. Power Co., 216 S. W. 923; Wagner v. Construction Co., 220 S. W. 890.

JAMES T. BLAIR, J.—Respondent recovered judgment for damages for injuries she alleges she received when a truck in which she was seated was brought into collision with one of appellant's cars, and this appeal followed.

On July 4, 1916, a picnic party of eighteen young men and women of Kansas City were on their way to Fairmount Park. They were being conveyed in a motor truck, and had proceeded to a point on Washington Park Boulevard, a short distance east of Cambridge Avenue, when they reached the tracks of the St. Louis & San Francisco Railway Company, which there cross the avenue about at right angles. The evidence tended to show that a long freight train was then passing over the crossing; the truck was stopped upon appellant's east bound track a few feet west of the crossing, and stood there facing east toward the passing train for three or four minutes; one of appellant's cars approached from the west at a speed of twelve or fifteen miles an hour; when the motorman was more than four hundred feet distant from the truck he saw it upon the track upon which his car was proceeding; the back of the truck was toward the street car, and respondent was seated with her back toward the car; the track was almost level and was dry, and the car could have been stopped within a distance of thirty or forty feet; there was a safety stop for east-bound cars, near the place where the truck was standing and between it and the point from which the motorman first saw it; the motorman sounded no signal or warning, did not check his car at all, but ran it at undiminished speed past the safety stop and against the truck, and thereby seriously injured respondent. There was a verdict for $20,000. The trial court required a *remittitur* of $8000, and judgment was entered for

$12,000. Appellant contends the court erred (1) in refusing to sustain a challenge for cause to juror Hogue; (2) in refusing to discharge the jury because juror Barker, appellant contends, became disqualified during the trial; (3) in admitting evidence concerning respondent's mental condition; (4) in giving and refusing instructions; and (5) in permitting judgment for an excessive sum.

1. On the *voir dire* examinations of the panel, George Hogue, in answer to a question of appellant's counsel, stated he did not think the "city got a square deal" on the "franchise proposition." The reference was to a transaction in 1914 between the city and appellant which concerned appellant's franchise.

**Juror.**

Hogue said he had no prejudice against appellant at the time of the trial in June, 1918; that he could not say he had a prejudice against appellant, but still thought the city did not "get a square deal" in 1914. In answer to questions he said, in effect, that his view of the franchise transaction would have nothing to do with his attitude toward appellant in this case; that he "would take the evidence," and that the question concerning appellant's contract rights for operation would not have anything to do with a claim for injuries inflicted in the operation of the road. Counsel argue Hogue admitted he had an existing prejudice against the company. Into the questions he propounded, counsel quite skillfully wove implications and assumptions of such a prejudice. The juror avoided these as best he could, and his answers show he did not intend to adopt them. He distinguished between a "prejudice" and his opinion concerning the matter of the 1914 franchise. His whole examination shows he was not satisfied with that agreement, but, properly understood, shows no more.

It is true that the question concerning a juror's qualification is to be tried by the court and not by the juror (Theobald v. Transit Co., 191 Mo. l. c. 417), but it is also true that after the court has tried it the ruling

comes here accompanied by a presumption of correctness which is overthrown only when the record shows the ruling was clearly against the evidence. [Theobald v. Transit Co., *supra,* and cases cited.] The record does not convict the juror of prejudice. He, in effect, denied the assumption by counsel that he entertained such a feeling. The character of the matter with respect to which the juror did not approve appellant's course was not, in its nature, so far as the record shows, such as to prove prejudice in 1918 and disprove the juror's denial of prejudice. Hogue was apparently candid with court and counsel. He recognized the irrelevancy of the franchise question to the issue in this case. He thought it "had nothing to do with it" and that the evidence should govern. He said the evidence would govern him. We do not think the record shows the trial court erred in overruling the challenge for cause.

II. The case went to trial on June 5, 1918. The taking of evidence was finished during the afternoon of Monday, June 10, 1918. The instructions were then given and the arguments followed. Thereafter, but at some time on June 10th, a unanimous verdict was returned. In support of its motion for new trial appellant

Injury to Juror's Wife.

filed the affidavit of one of its claim-agents in which it was stated that on June 8, 1918, the wife of one of the jurors, George R. Barker, was injured while riding with her husband as a passenger on one of appellant's cars. Appellant also filed the affidavit of Meyers in which Meyers stated that on June 14, 1918, he presented to Barker for his signature a form of affidavit; that in this form it was set out that Barker was a foreman of the jury in this case and that Barker and his wife were on one of appellant's cars on the evening of June 8, 1918, and Mrs. Barker was injured while riding as a passenger thereon. It was also set out in this form that Barker was present when his wife was injured and that it "caused him to be sore and peeved under the circumstances," and that a claim for

the injury to Mrs. Barker had then (June 14) been made. Meyers, in his affidavit, stated that Barker refused to sign the paper he presented to him, but "admitted the truth of the unsigned affidavit." Respondent filed Barker's affidavit. In it he stated that some one representing appellant presented a form of affidavit for his signature, but that he refused to sign it because it was not true in all respects; denied that he admitted to Meyers the truth of all the statements in the form he refused to sign; admitted his wife received an injury to one of her arms while he and she were passengers on one of appellant's cars on June 8, 1918, but stated that neither he nor his wife had made claim against appellant, though claim-agents of appellant had called and endeavored to settle; denied that he became "sore and peeved" against appellant; and "affiant further states that said accident to his wife did not prejudice him against said defendant . . . in the trial of this cause, and that said accident to his wife had no effect whatever on his deliberations as a juror in the cause or on his verdict so given in favor of plaintiff in said cause, and that he now has no prejudice against defendant by reason thereof; and that said accident had no bearing whatever on his verdict in the above cause, but that said verdict was given by affiant because he believed it true and just."

Though the injury to Mrs. Barker, whatever it was, occurred on the evening of June 8, 1918, and the verdict was not returned until nearly forty-eight hours later, no motion to discharge the jury was made before verdict. The ruling on the point will not be put on that ground, however. With Barker's affidavit on file no additional evidence, documentary or other, was offered to show that either he or Mrs. Barker had made any claim against the company. From this and the affidavits and the date of the order overruling the motion for new trial it appears, therefore, that at least as late as July 13, 1918, neither Barker nor his wife had attached enough importance to

Mrs. Barker's injury to have made claim for damages. That fact is of no great consequence, but it is not improper to mention it. The significant thing is that at no time did appellant inform the trial court of the character of Mrs. Barker's injury. It may well be that there are injuries the nature of which is such that a feeling of hostility toward the person or agency which inflicted them would be fairly inferable. We do not think that a bald showing that Mrs. Barker was injured in some way "while riding as a passenger" discloses enough to justify such an inference of hostility toward appellant. Besides the failure to show whether the injury was a serious one or a mere scratch, there was also a failure to show appellant's fault or responsibility. It is quite possible for one "riding as a passenger" to receive an injury for which the carrier is in no wise responsible. It was incumbent upon appellant, upon this ground of its motion, to convince the trial court that the incident upon which it relied so disqualified Barker that a verdict in which he participated ought not to stand. It was essential that appellant show that appellant had so injured Barker's wife that prejudice on his part against appellant resulted of such character that the verdict was invalidated thereby. Appellant did not even admit responsibility. Perhaps, it had in mind the doctrine of *res ipsa loquitur*. We are of the opinion that the circumstances called for a frank exposition of the facts and that the guarded, careful and successful effort to avoid acceptance of responsibility for Mrs. Barker's injury, while perhaps commendable as protective of appellant's rights as against Mrs. Barker, falls short of showing the facts necessary to sustain this ground of the motion for new trial. The showing made does not convict the trial court of error in its ruling.

III. Complaint is made that respondent's testimony that her injury caused her to be affected with loss of mem-

ory was not within the pleadings.  The petition
**Necessary Result of Allegation.** alleged the injury respondent received resulted in "the impairment of her mental faculties."

Besides this no exception was taken to the action of the trial court in connection with appellant's motin to strike out the testimony.

IV.   Complaint is made of the principal instruction given at respondent's instance.  It is said (1) that the charge of negligence  in the petition is specific and that **Instruction.** the instruction did not confine respondent's right to recover to the specific negligence charged; and (2) the instruction did not "take into consideration" the defense that the injury was the result of the truck backing into the car.

(1)   The petition first charged that the injury to respondent was caused by the negligence of defendant. This general allegation was followed by numerous specifications of negligent things alleged to have been done. **General and Special Allegations.** One specification was that appellant's employees "failed and neglected to run and operate said car in a manner that said car would be under such control that it would not be run into and against said automobile when they saw, or by the exercise of reasonable care could have seen, said automobile truck ahead of said car  on  said  track  and street."  There was evidence tending to support this allegation.  It is a specification of negligence and was pleaded as such.  The instruction required the jury, before finding for respondent, to find (1) that she was seated in an automobile truck (2) over which she had no control and (3) which was standing still upon appellant's track ahead of the car, and (4) that respondent was in danger of being struck if the car did not stop and continued on its course;  (5) that said street car was so negligently operated, managed or controlled by the motorman that it was negligently caused to be run into and strike the truck;  (6) that the motorman negligently ran the car against the truck when he saw or in the exercise of or-

dinary care could have seen the truck on the track ahead of the car, and by the exercise of ordinary care could have stopped the car and have avoided striking the truck. These various findings were all required before a verdict for respondent was authorized by the instruction. The motorman was offered by appellant and testified he saw the car when he was more than 400 feet distant from the truck. It is true that instructions must be within the pleadings; that an allegation of general negligence is restricted by specifications of particular negligence; and that instructions, in such a case, must submit nothing outside the specific charges. In this case among the specifications of negligence which follow the general charge is that already quoted. That this allegation was in itself specific and not a mere general charge of negligence is shown by the decisions cited by respondent. [Davidson v. Transit Co., 211 Mo. l. c. 361; Beier v. Transit Co., 197 Mo. l. c. 232, 233; Thompson v. Livery Co., 214 Mo. l. c. 490, et seq.] This allegation was fairly submitted to the jury by the assailed instruction.

(2) There was no plea of contributoy negligence. There is no claim there was any evidence of it. Nevertheless the instruction required the jury to find, before finding for respondent that she "at the said time and place acted as a reasonably prudent person would have acted under the same or similar circumstances for her own safety." The instruction further required the jury to find, before finding for respondent, that "at the time and place in question plaintiff was seated in the automobile truck in question and that said truck *was standing still on the track* ahead of the street car," etc. That finding, if made, negatived the defense that the truck backed into the car, and the instruction did not authorize a verdict for respondent until that finding was made by the jury. If the jury found the car was not standing still it was not authorized by the instruction to find for respondent at all. The objection is not well taken. Further, that there could be no doubt in the jury's

*Negativing Defense.*

mind, it was instructed, at appellant's instance, that if the truck backed into the car too late for the motorman to discover the consequent peril, the verdict should be for appellant.   Respondent's instruction was even broader in this respect than was that asked by appellant.   The instruction is not open to the objection made.

(3)   It is said the instruction omitted to require findings that respondent was oblivious of her danger and that appellant's employees saw or could have seen that to be her condition.   If such a finding is required on facts like those in this case in a submission on the humanitarian doctrine, still the instruction is not vulnerable to the criticism.   It submitted the case on common law negligence.   It conjunctively required a finding pertinent to the humanitarian doctrine, but this was merely one requirement more than was necessary.

Unnecessary Requirement.

(4)   The refusal of one instruction asked by appellant with respect to the burden of proof is justified by the fact that other instructions given at appellant's instance covered this feature.

V.   The verdict was for $20,000.   The trial court required respondent to remit $8000, and then rendered judgment for $12,000.   It is insisted this sum is excessive.   The evidence showed that at the time respondent was hurt she was twenty-five years old.   She was "strong, healthy and rosy."   Her weight was one hundred and forty pounds.   She had never been sick except an occasional "cold" or the like.   Her hearing had at a time three or four years previous been slightly affected, probably from her service five or more years before in a rural telephone exchange, but this had yielded to treatment and no longer troubled her.   All the organs of her body functioned normally.   She lived with her mother and had been employed in stores and shops in Kansas City for about four years.   She was steadily employed and lost no time by reason of any physical ailment.   She was hurt on July 4, 1916.   The truck in which

Verdict.

she was sitting was struck heavily by the street car and she was thrown from her seat and rendered unconscious. Emergency treatment was given her. Her back, hip and leg suffered bruises and abrasions of considerable severity and extent, and it was evident she had received a very severe shock. One of her kidneys was displaced to such an extent that it had four or five inches too much movement. In the course of two years this was reduced to about three inches. The uterus was retroverted, so that the cervix pressed against the bladder and the body against the rectum. The ovaries were inflamed and painful. The testimony was that the effect of the displacement of the kidney was to interfere with the regularity and efficiency of its performance of its functions and to cause pain. The abnormal position of the uterus was said to result in irritation of the bladder and tend to affect control of urine and that its position would be painful. The evidence was that respondent suffered pain much of the time; that she was unable to sleep regularly; that she was very nervous; poor appetite; suffered from frequent headaches; that she was afflicted with constipation and was drowsy; that her hearing and eyesight were somewhat affected, and she had suffered some impairment of her memory; that her mental powers had been somewhat affected; her weight at the time of the trial was 102 pounds, and she was no longer healthy in appearance but had become thin, haggard and sallow and appeared to have grown disproportionately older. She was kept at home in Kansas City until August 10, 1916, when she was taken to her brother's home at California. There she remained in bed continuously for two and one half or three months. During the next eight months she was able to sit up part of the time, but was confined to her bed a great deal. In November, 1917, she returned to Kansas City. She attempted to work at two or three places, but worked only a relatively short time. The evidence indicates that an operation may correct the position of the displaced organs. Unless so corrected the conditions due to their displacement are permanent.

After a consideration of the facts and of the cases cited the court is of the opinion that the judgment is still excessive. It should be reduced to $10,000. Therefore, if respondent will, within ten days, remit the sum of $2,000, the judgment will stand affirmed, as of the date of its original entry, for $10,000; otherwise the judgment will be reversed and the cause remanded. All concur.