IDA PARLON, Appellant, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY.—17 S. W. (2d) 528.

Division One, May 18, 1929.

*Wilbur C. Schwartz* for appellant.

*T. E. Francis* and *B. G. Carpenter* for respondent.

SEDDON, C.—Plaintiff seeks recovery of damages in the sum of $10,000 for personal injuries alleged to have been suffered by her on April 10, 1923, and to have been caused by the negligent starting of a northbound street car on defendant's Jefferson Avenue street-car line · in the city of St. Louis, upon which car plaintiff was a passenger, while plaintiff was alighting from the front platform of said street car, and before she had a reasonable time to alight therefrom, and while she was standing on the step of the front platform of said street car. The substantive averments of plaintiff's petition are as follows:

"Plaintiff further states that on or about the tenth day of April, 1923, she boarded and got upon a northbound street car then and there owned, run and operated by the defendant and called a Jefferson Avenue car, with the consent of the defendant and his servant and conductor, and paid her fare to said conductor in charge of said car, and was being transported as a passenger thereon and was accepted by the defendant and his servant and conductor in charge of and operating said car as a passenger thereon, and thereby became and was a passenger on said street car when she was injured as hereinafter stated.

"Plaintiff further states that after she had boarded and gotten upon said street car and while she was a passenger thereon she gave a signal to the conductor and motorman in charge of said street car to stop said street car at Eads Avenue, and that said street car was stopped at Eads Avenue for that purpose, and while she was alighting from the front platform of said street car and before she had a reasonable time to alight from said street car and while she was standing on the step of the front platform of said street car and before she had reached a place of safety on the street, the defendant then and there

negligently caused and permitted the street car on which she was a passenger to be suddenly started, whereby she was injured."

The answer is a general denial of the averments of the petition.

A trial of plaintiff's action resulted in a unanimous verdict of the jury in favor of defendant. After due and timely procedural steps, plaintiff was allowed an appeal to this court from the judgment entered upon the verdict.

The plaintiff testified, in substance, that on the afternoon of April 10, 1923, she was a passenger for hire upon a street car (admitted by defendant to have been then operated by defendant's servants and agents) northbound upon defendant's Jefferson Avenue car line; that she gave a signal, by the ringing of a bell, that she desired to get off the car at the customary stopping place at Eads Avenue; that she then walked to the front end of the car; that the motorman was talking to a man who was sitting on the sand box; that the car was stopped and the front door was opened; that she caught hold of the handrail of the front door and stepped down with her left foot, and that the car started and threw her headlong on the flat of her back on the concrete pavement of Jefferson Avenue; that the front platform of the car was an enclosed vestibule; that she was getting off the car in the usual manner, and, before she alighted on the street, the car started and threw her; and that no part of her body, and neither of her feet, was on the ground when she was thrown by the starting of the car.

Upon cross-examination, plaintiff testified: "Q. When you started to alight from this street car, you say you took hold of the handrail with your right hand? A. Yes, sir. Q. That is the handrail to the rear of the front door? A. Yes, sir. Q. To your right side, in other words, as you faced the outside of the car? A. Yes, sir. Q. To leave? You took hold of that with your right hand? This was a northbound car, was it? A. Yes, sir. Q. Then you put your left foot down on the step, is that right? A. Yes, sir. Q. Now, where was your right foot? A. On the top landing of the car. Q. I see. Your right foot was on the top landing and you put your left foot down on the step? A. Yes, sir. Q. And you say at that moment the car started? A. Yes, sir. Q. You were then facing to the rear, were you? A. I was facing to the east to get off. Q. Well, when you took hold of this handrail of a northbound car, with your right hand, put your left foot down on the step and left your right up on the upper platform, that brought you around facing to the rear, didn't it? A. No, I was looking down to where I stepped. Q. Well, did you step straight out? A. I stepped straight down on the step. Q. Yes. And didn't that swing your body so that you were facing to the rear of the car instead of to the front? A. I wouldn't know how it would swing my body. It swung my body this way and threw me to the street. Q. Yes. Is that the ordinary

way that you get off of street cars, facing to the rear instead of to the front? A. I never faced to the rear when I got off. I was forced by the force of the motion of the car, swung my body. . . . Q. How far did this car move when it started up, as you say? A. When it started up? Q. Yes. A. I do not know because I lay there motionless. Q. Well, you say you saw the motorman get out of the front platform and come to your assistance? A. No, he just picked me up. I don't know that he got off the car; I didn't see him. I lay there; I couldn't move a muscle. Q. Well, were you lying near the center of the car, or near the rear door, or where were you? A. I was lying with my head to the south. Q. Head to the south? A. Yes. Q. As a matter of fact, weren't you right at the front door of the car when they picked you up? A. I was thrown— Q. Answer my question, weren't you right at the front door of that car when you were picked up? A. Well, I was right—the motorman led me to the front end. Q. How far did you have to walk? A. I couldn't say. Q. You have no idea? A. I was in a dazed condition and I just couldn't hardly move. The motorman helped me on the car. Q. You were dazed, you say? A. I was dazed, yes. Q. Did you know what you were doing? A. I just knew what was going on, but I couldn't say how far away I was from the front step. Q. I want to ask you this question: Isn't it a fact that when you got to your seat you were immediately east of the front door of that car, and that the only step you had to take and get on that car and board it at the front entrance were two or three steps directly west and right into the front door of that car? A. All I recollect is that the motorman led me to the step.''

The defendant adduced evidence tending to show that the motorman stopped the street car, in response to plaintiff's signal, and that, after the car had stopped, plaintiff stepped to the street in safety, and, in walking away from the car, plaintiff stepped on a manhole cover in the street, slipped and fell, and that, from and after the time the car was stopped, the car never moved again until after plaintiff had fallen and had been assisted back onto the car.

In rebuttal, plaintiff adduced evidence tending to show that the manhole cover was located some considerable distance from the place where plaintiff was thrown upon the street, and that she was not thrown or injured by stepping or slipping upon the manhole cover.

Plaintiff submitted her case solely upon an instruction on the measure of damages, and requested the giving of no instruction presenting and submitting her theory of recovery, or of defendant's negligence. At defendant's request, the court gave an instruction, which presently will be quoted and discussed herein as a ground of error assigned by appellant.

I. Appellant assigns error in the refusal of the trial court to sustain and allow plaintiff's challenge of a venireman, one Young, for cause. It appears from the record herein that, upon *voir dire* examination, the venireman Young, in response to certain questions touching his qualifications and competency as a juror propounded by counsel for the respective parties, stated that he recently had compromised a damage suit, and, knowing the facts in that suit and the deposition the plaintiff therein had given, he "was afraid" that he had a prejudice against damage suits, and that he had been twice excused from jury service on that particular day because of such a statement made by him; that "I would give a man a square deal, any time, what I thought was a square deal, but there might be some prejudice; it might make me prejudiced;" that he believed that plaintiff (herein) is entitled to a fair trial, and that, if he were the plaintiff in the instant case, he would not like to have his case tried by a jury "in the frame of mind he was in;" that he would not say positively that he had any prejudice, but that he might have a prejudice; and that he was "afraid he might be prejudiced," because of his recent experience in such a damage suit. Upon being further interrogated by counsel for plaintiff, the venireman Young stated that, if he had not had the recent experience of being a party to a damage suit, he "could accept the testimony better," whereupon counsel for plaintiff asked the venireman whether, "you having had another case on the outside, that has sort of poisoned you, hasn't it?," to which he answered, "That is probably stating it correctly." Further explaining his attitude in the matter, the venireman stated that "I couldn't help but have a little feeling down in my heart against damage suits; a man with a crippled hand can't do the work he could with his good hand; I might be poisoned; that is the way I make the statement, I would do the best I can." To the inquiry of the trial judge, the venireman answered:

"THE COURT: "Q. Now, Mr. Juror, I understand you to say that there might be a possibility of your being prejudiced, but that you are not sure of it? A. No, sir, I am not.

"Q. Well, now, the purpose of calling eighteen men is to try to get twelve men who are fair and impartial, who will try this case and decide it solely and only according to the evidence that they hear from the witnesses who take the chair here and testify and according to the instructions as given by the court. You are not to take into consideration anything that happens outside of what transpires in the trial of this case. Now, if you are left on this jury, if you happen to be one of the twelve, could you decide the case solely and only according to the evidence that you hear from the witnesses here on the witness stand and the instructions as given to you by the court? A. To the best of my ability.

"Q. Well, now, the best of your ability: You and you alone are in a position to say just what you can and cannot do, you alone know what your mind is. Now, it is up to you to decide whether or not, if you are selected as one of the twelve, if you can try the case and your verdict be rendered solely and only from the evidence which you hear from the witnesses on the witness stand and the instructions given to you by the court.

"MR. SCHWARTZ: If the court please, pardon me for interrupting you, he has already stated in answer to a question that he wouldn't like to be tried by a jury, if he were either the plaintiff or the defendant in a damage suit, with a jury whose minds were made up as his is.

"THE COURT: I understood him to say in answer to your question that he would, if he was plaintiff in the case, be willing to submit his case to such a jury.

"MR. SCHWARTZ: No.

"THE JUROR: No, I answered that I would not; I would prefer to have twelve men that didn't have such a recent experience as I have had to try my case.

"THE COURT: Q. Well, then, do I understand you to say that you feel that if you were selected as one of the twelve then you could not render a verdict according to the evidence which you hear from the witnesses here on the witness stand and the instructions as given to you by the court? A. Your Honor, to the best of my ability I would try to, but there is—

"Q. That isn't the point, to the best of your ability, you know whether you can or cannot. A. I think I could.

"Q. You are the only man that knows it, now; you know just what you can do and what you cannot do. A. Well, I think I could. It depends altogether on the evidence.

"Q. Sure, every other man here is going to render a verdict according to the evidence; it depends entirely upon the evidence. I am not asking you to form an opinion, and you are not to form an opinion until you hear all the evidence, until the court gives you the instructions and then you retire to your jury room, and that is the time then for you to form an opinion and make it known through a verdict; that is the duty of a juror. A. Yes, sir. Well, I have no opinion formed whatsoever. I just brought that up because I wanted it to be known that I have had that experience. They usually ask those questions. My mind is not made up and I would try to be fair, and think I would be fair.

"Q. You say you would be fair? A. I don't think that I am prejudiced, but there might be a possibility of it.

"THE COURT: I will overrule the objection. . . .

"THE COURT: I will overrule the challenge because of the fact that the juror stated that he was of the opinion that he could render a fair and impartial verdict in the trial of this case after hearing the evidence and according to the instructions given by the court; that he would base his decision solely and only according to the evidence he hears here from the witness stand and the instructions given by the court. For that reason I will overrule the challenge."

It furthermore appears from the record herein that the venireman Young was not selected as one of the twelve jurors who tried the action, and who returned the verdict herein. The inference, of course, necessarily follows that he was peremptorily challenged, but the record does not disclose whether plaintiff or defendant peremptorily challenged him.

In McCarthy v. Railway Company, 92 Mo. 536, 539, a juror was challenged for cause, having stated on *voir dire* examination that he was prejudiced against all damage cases. Being asked if such bias existed at that time, he answered that it did. Asked if it would require evidence to remove such prejudice in the case at hand, he answered: "Well, I suppose there would have to be evidence any way" —that it would require strong evidence. Thereupon the trial court asked the juror if he could hear the evidence in the case and render a verdict according to the law and the evidence, which question the juror answered affirmatively. He also answered in the affirmative when asked by the court whether, in case the evidence should sustain plaintiff's cause of action, he could, under the evidence and instructions of the court, give the plaintiff a verdict. Asked by plaintiff's counsel whether the prejudice that existed in his mind against all damage suits, including the case on trial, would be such that it would require evidence to remove the prejudice before he could find a verdict for plaintiff, the juror answered, "If you will allow me I will answer it this way—if the evidence went to show that the party was entitled to damages, then, as a matter of justice, I would be in favor of awarding damages; otherwise, I could not." Asked if he would start into the case with a prejudice against it which would require evidence to remove, the juror answered: "Not in this case. I have no prejudice against this case, because I don't know anything about it." Said Judge BLACK, speaking for this court in denying the claim of error in the action of the trial court in overruling plaintiff's challenge of the juror for cause: "It is not every opinion of a juror, concerning the matter in litigation, which will operate as a disqualification. To have that effect, it must be such an opinion as will influence his judgment in the consideration of the cause. . . . Opinions formed, but not of a fixed character, and which readily yield to evidence, do not disqualify the juror. [State v. Walton, 74 Mo. 270.] If he have such a bias or prejudice against a class of cases that his judgment will be

warped, then he should be set aside and not accepted as a juror; but it ought to appear that his bias is such as to influence his judgment. Again, the competency of a juror is a mixed question of fact and law. It is for the court to try this question of fact, and the finding of the trial court as to the competency of the juror ought not to be disturbed, unless it is clearly and manifestly against the evidence. This rule is to be deduced from what has been heretofore said by this court. [State ex rel. v. National Bank, 80 Mo. 626; Montgomery v. Railroad, 90 Mo. 446.]''

In Ruschenberg v. Railroad Co., 161 Mo. 70, 87, GANTT, J., speaking on behalf of this court to a like assignment of error, said: ''The next and last assignment is that two of the jurors were incompetent and disqualified themselves on their *voir dire* examination. They both answered that they were prejudiced against personal damage suits; that there were too many such suits brought; that they knew nothing about this particular suit; that their prejudice was a general prejudice against such suits; that they knew no reason why they could not try this case fairly and decide it according to the evidence and instructions of the court. One admitted he would start in with a bias in his mind against such cases, but in answer to the court's question, 'Then I understand you to say that your prejudice is merely against damage suits in general; that you have no prejudice whatever against this suit?' he said, 'No, sir, not against this case in particular.' Counsel for plaintiff then asked, 'Then I understand you to say if the evidence in this case was sufficient to convince you that the plaintiff had a good cause of action, you would give him a verdict?' and he answered, 'Yes, sir.' So much depends upon the manner of the juror and his tone of voice, and the opportunities of the trial judge to see and know the jurors, that it has become the settled practice of this court not to interfere with his finding unless it is manifest he has erred. The competency of [a juror is (?)] a question of fact and the finding of the circuit court will not be disturbed unless clearly against the evidence. [McCarthy v. Ry. Co., 92 Mo. 536; State v. Cunningham, 100 Mo. 382; Mahaney v. Ry. Co., 108 Mo. 199; State ex rel. v. Bank, 80 Mo. 633; Coppersmith v. Ry. Co., 51 Mo. App. 366.] Applying these principles we cannot say the circuit court erred in accepting the two jurors in this case.''

In State v. Rasco, 239 Mo. 535, 561, a prosecution of defendant for the crime of murder, we said: ''Whether a juror is competent is a question of fact to be determined by the trial judge, who has the advantage of seeing the juror and hearing him testify. It is quite natural that men,, unaccustomed to courtrooms, and to the technical and, sometimes, confusing questions of lawyers, should give contradictory answers. The testimony must be considered as a whole. . . . The

[challenged] jurors clearly stated that, notwithstanding such opinions, they could try the case fairly and impartially. Their answers as a whole, weighed in the light of their demeanor while testifying, satisfied the trial court that they were qualified under the statute to give the defendant a fair trial. We cannot say that the court erred in so ruling.''

The general rule respecting appellate review of rulings on challenges of jurors is thus stated in 16 Ruling Case Law, section 104, page 289: ''The decision of the trial court as to the qualification of jurors may be reviewed on appeal when it raises legal questions; as, for example, where there is an absence of any evidence to support it, in which case it is an error of law to which an exception lies. But the finding of the trial court on the competency of a juror ought not to be set aside by a reviewing court, unless the error is manifest, or there is a clear abuse of discretion. And it is a familiar rule that where there is evidence to support the findings of the court on the question, its decision should be affirmed. When a full examination of a juror leaves the question of his competency doubtful, the appellate courts generally leave the ruling of the trial court undisturbed.''

The appellant, as the basis of her claim of error respecting the action of the trial court in denying the challenge of the venireman Young for cause, relies strongly upon the ruling of this division of this court in Theobald v. Transit Co., 191 Mo. 395, wherein two veniremen were challenged for cause by the defendant Transit Company, which was a public street railway carrier for hire. It appeared upon *voir dire* examination that one of the veniremen, some eight or nine years before the trial of the pending cause, had been thrown from a street car, and the venireman stated that such experience would influence him in the trial at hand and that he had a prejudice against street railway companies, which prejudice had not been removed until the very time of his examination as a venireman in the case on trial. Upon further inquiry by counsel for the respective parties and by the trial court, the venireman stated, however, that he then entertained no such prejudice; that he had no feeling either for or against the plaintiff or the defendant; and that he could go into the jury box and try the case at hand ''according to the testimony and the law, and nothing else.'' Another venireman stated that he had a general prejudice against the defendant railway company, which prejudice ''would probably unconsciously bias his opinion,'' and that, while he would try the cause according to the testimony, unconsciously his opinion would be biased and he ''would give more preference to the testimony of a non-employee of the company'' than he would to the testimony of an employee of the defendant company. In sustaining the assignment of error urged by the defendant in that case, MARSHALL, J., speaking for this

division of this court, said (191 Mo. 1. c. 416 et seq.)': "Under our system of jurisprudence there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced. . . . The question of the qualification of a juror is a question to be decided by the court, and not one to be decided by a juror himself. It is the prerogative and duty of the trial court to exercise a wise, judicial discretion in this regard, and the conclusion of the court should rest upon the facts stated by the juror with reference to his state of mind, and should not be allowed to depend upon the conclusions of the juror as to whether or not he could or would divest himself of a prejudice he admitted existed in his mind. And this is true whether the prejudice exists against either of the parties, or against the character of the subject-matter in litigation, or against either of the parties as a class, and not against the party as an individual. It is proper to examine a juror as to the nature, character and cause of his prejudice or bias, but it is not proper to permit the juror, who admits the existence in his mind of such prejudice or bias, to determine whether or not he can or cannot, under his oath, render an impartial verdict. Such a course permits the juror to be the judge of his qualifications instead of requiring the court to pass upon them as questions of fact."

The distinguishing feature, or circumstance, between the Theobald case and the case at bar is that the challenged veniremen in the Theobald case *admitted the existence* of a bias or prejudice in their minds, whereas the venireman Young in the present case stated merely that he "was afraid" that he had a prejudice against damage suits, and that he would not say positively that he had any such prejudice, but that he was "afraid he might be prejudiced." When further examined by the trial court touching his qualifications and competence as a juror, and whether, if selected as a juror, he could render a verdict according to the evidence and the instructions of the court the venireman Young then said: "Well, I have no opinion formed whatsoever. My mind is not made up and I would try to be fair and think I would be fair. I don't think I am prejudiced, but there might be a possibility of it."

In a more recent case, Richardson v. Railways Co., 288 Mo. 258. 263, 231 S. W. 938, 940, this division of our court said: "It is true that the question concerning a juror's qualification is to be tried by the court and not by the juror (Theobald v. Transit Co., 191 Mo. 1. c. 417), but it is also true that after the court has tried it the ruling comes here accompanied by a presumption of correctness which is overthrown only when the record shows the ruling was clearly

against the evidence. [Theobald v. Transit Co., supra, and cases cited.]''

Applying the principles, or rules, of law as announced by this court in the cited cases, supra, we cannot say that the ruling and finding of the trial court as to the competency of the venireman Young was clearly and manifestly against the evidence, nor can we say from the record herein that it is manifest that the learned trial court erred in his ruling and finding. The trial court had the opportunity, necessarily denied to us, of observing the manner and demeanor of the venireman while testifying respecting his qualification and competency as a juror, and, upon the consideration of his testimony as a whole, weighed in the light of the venireman's manner and demeanor while testifying, the trial court was satisfied that the venireman was qualified, and not incompetent, as a juror. The presumption of correctness in the trial court's finding and ruling, in our opinion, is not overthrown (upon the record before us) as being clearly and manifestly against the evidence, or as being wholly without and evidence to support such finding and ruling.

Furthermore, it is not apparent to our minds that appellant was harmed by the ruling of the trial court; in other words, if the finding and ruling of the trial court in denying the challenge of the venireman Young for cause constitutes error (and we think it does not), such error was harmless and immaterial under the record facts herein, and does not fall in the category of reversible error. As we have said, the record discloses that the venireman Young was not one of the jurors who tried appellant's action and who returned the verdict against appellant. Necessarily, in view of the fact that the venireman Young was not suffered to be challenged for cause, he must have been peremptorily challenged. Whether he was peremptorily challenged by appellant, or whether by respondent, the record is silent. But assuming that he was peremptorily challenged by appellant, perforce of his possible bias and prejudice against damage suits, and that thereby appellant was obliged to exercise one of her three peremptory challenges in order to strike the venireman Young from the jury panel, nevertheless it does not appear that the verdict of the jury would have been otherwise had the challenge of the venireman Young for cause been sustained by the trial court; this, for the reason that the verdict of the jury of twelve members was unanimous. Had only nine jurors signed and returned the verdict against appellant and in favor of respondent a wholly different question would be presented herein, and the error (if such there had been) in refusing appellant's challenge of the venireman Young for cause, thereby forcing the appellant to exercise one of her three peremptory challenges in order to

remove the venireman Young from the jury panel, might have been material, and might have worked some substantial and appreciable harm to appellant. But even though the venireman Young had been stricken from the jury panel for cause, and thereby appellant had been afforded the privilege of peremptorily challenging and striking one more venireman from the panel, there still would have been left on the panel eleven of the twelve jurors who returned the verdict herein against the appellant, two more than a sufficient number to have returned a finding and verdict against appellant under our Constitution, as amended on November 6, 1900. [Sec. 28, Art. II, Mo. Const.] Prior to the amendment of November 6, 1900, said section of the Constitution required a unanimous verdict of the common-law jury of twelve men in both civil and criminal cases, but the amendment of 1900 added to said section of the Constitution the sentence or clause: "And that in the trial by jury of all civil cases in courts of record, three-fourths of the members of the jury concurring may render a verdict."

In 4 Corpus Juris 952, 953, it is said: "Error in refusing to sustain a challenge for cause is not prejudicial where the peremptory challenges were not exhausted, or *where the verdict shows that no prejudice resulted;* and while there are decisions which hold that error in refusing to sustain a challenge for cause will require a reversal where all the peremptory challenges were exhausted, what is believed to be the better rule is that the erroneous overruling of a challenge for cause, even though the peremptory challenges are thereafter exhausted, will not warrant a reversal of the judgment unless it is further shown on appeal that an objectionable juror was forced upon the challenging party and sat upon the jury after such party had exhausted his peremptory challenges. And it has further been held that, notwithstanding the exhaustion of peremptory challenges, the overruling of a challenge to a juror will not constitute ground for reversal where by statute a three-fourths verdict could have been rendered and the verdict was unanimous." [Citing in support of the latter statement, Guthrie v. Snyder, 43 Okl. 334, 143 Pac. 8.]

Appellant's first assignment of error must be overruled and denied, for the reasons just stated.

II. Appellant assigns as error the action of the trial court in giving to the jury, at the request of defendant, the following instruction:

"The issue in this case, gentlemen, is very simple. The plaintiff, on her side, claims that while she was alighting from the front end of the car, and before she had reached the ground in safety, the car

was caused to start forward, throwing her. The defendant, on its side, denies that the car started forward while she was in the act of alighting. This issue is for your determination. The plaintiff is bound to prove by the greater weight or preponderance of the evidence, that is, by evidence which in your judgment outweighs other evidence and circumstances in the case, that the car did start while she was in the act of alighting. If she has failed to meet this burden she cannot recover and your verdict must be for the defendant."

It is claimed by appellant that such instruction erroneously states and narrows the issues presented by the pleadings and the evidence, and that the instruction is ambiguous and misleading. Appellant complains of the use of the term, *"start forward,"* as used in the instruction. The petition charges that "while she (plaintiff) was *alighting* from the front platform of said street car and before she had a reasonable time to *alight* from said street car and while she was *standing on the step* of the front platform of said street car and *before she had reached a place of safety on the street,* the defendant then and there negligently caused and permitted the street car on which she was a passenger to be suddenly *started."* [Italics our own.] Appellant urges that the word *"start,"* as used in the petition, means merely "to move," and that it is not alleged in the petition that the car started, or moved, *forward,* nor did the plaintiff testify that the car moved *forward;* hence, it is insisted by appellant that the use of the term *"start forward,"* in defendant's given instruction, narrowed the issue presented by the petition and by plaintiff's evidence. But there is no evidence whatever to be found in the record that the car moved *backward.* On the other hand, a close study and analysis of plaintiff's testimony clearly indicates to our minds that her own theory, and that of her counsel, was that the car started, or moved. *forward;* as, for instance, plaintiff was asked on direct examination by her own counsel, "Now, then, after the motorman *came back* and picked you up, then where were you taken?" clearly indicating that counsel for plaintiff entertained the theory that the front platform of the street car was ahead, onward, in advance, or forward, of the plaintiff as she lay in the street after having been thrown from the street car, and that the motorman *came back* from the forward platform of the car to plaintiff in order to pick or lift plaintiff from her prostrate position in the street. The common and ordinary use and acceptation of the verb "start" is to "proceed," "go onward," or "move forward." In our opinion, the addition and use of the adverb "forward" in the instruction added nothing to the ordinary use and acceptation of the verb "start," and the jury could not pos-

sibly have been misled thereby. The contention of appellant seems to amount to a mere "splitting of hairs."

Appellant furthermore complains of the phrase, "in the act of alighting," as twice used in said instruction. Appellant claims that such phrase is susceptible of the construction, and so conveys to the mind of the average juror, that plaintiff was in the act of stepping from the car to the street when she was thrown by the starting of the car. In other words, appellant seemingly contends that, by the use of the phrase "in the act of alighting," when viewed in the light of the context and considered in relation to other parts of the instruction, the jury could only have understood the instruction to mean that plaintiff could not recover unless she showed by a preponderance of the evidence that the car started while she was actually stepping from the car to the street, whereas the petition charged, and plaintiff testified, that the car started "while she was standing on the step of the front platform of said street car and before she had reached a place of safety on the street." Hence, it is urged by appellant that the defendant's instruction necessarily narrowed the issue made and presented by the petition and by the evidence, and that the jury well may have believed to be true every word of plaintiff's testimony, and yet have understood the instruction to mean that plaintiff was not entitled to recover for the reason that there was no evidence that the car started while she was "in the act of alighting," that is, while she was actually stepping from the car to the street. However, the instruction told the jury that "the plaintiff, on her side, claims that while she was alighting from the front end of the car, *and before she had reached the ground in safety,* the car was caused to start forward, throwing her." The instruction, we think, was well within the purview of both the pleadings and the evidence, and it neither narrowed nor enlarged the issues raised and joined by the pleadings.

It is said by appellant that the giving on behalf of a defendant of a similar instruction was held to be reversible error by the Springfield Court of Appeals in Rooker v. Railway Co., 204 S. W. 556, a case somewhat similar in its evidentiary facts to the case at bar. The instruction condemned by the Court of Appeals in the cited case was quite different from the instruction criticized by appellant herein. The instruction of defendant in the Rooker case told the jury, in substance, that "no person has the right to voluntary attempt to get off a train while it is in motion," and, if the jury found and believed from the evidence in the case that "plaintiff, at the time she attempted to alight from the train in question, knew that the train was moving, and that she attempted to alight therefrom and was injured, then she cannot recover." It was plaintiff's theory of re-

covery in that case, and she testified, that she was standing on the platform of one of the cars of the train, holding to the handrail, while the train was moving very slowly, when the train suddenly lurched forward and hurled or threw her off the train. Plaintiff testified that she was not attempting to alight, or to get off, the train while it was moving. An instruction asked by plaintiff, and given by the court, squarely presented to the jury plaintiff's theory of recovery, and of defendant's negligence, as afore-stated. The Court of Appeals ruled that defendant's instruction was contradictory of, and conflicted with, plaintiff's instruction, and that, by reason of such contradiction and conflict, the defendant's instruction denied to plaintiff the right to have the jury, fairly and without confusion on their part, consider her evidence and theory of recovery.

In the instant case, the record before us shows that plaintiff chose to submit her case solely upon an instruction on the measure of damages. Plaintiff did not present or request the giving of an instruction on her theory of recovery, or of the defendant's negligence. On the other hand, she stood by and suffered an instruction defining the issues to be given by the court at the request of defendant, which instruction she now claims was misleading and ambiguous, without attempting in any manner to aid either the trial court or the jury to clear up the alleged ambiguity, and without requesting an instruction on her behalf which might have clarified the issues and which might have presented her theory of recovery to the jury to her own satisfaction. In view of those circumstances, we think that plaintiff and appellant is not in a strong or favorable position to urge with much seriousness, upon appeal, that the jury may have been misled or misguided by defendant's instruction. But be that as it may. the defendant's instruction was well enough, and we find no reversible error therein.

The record indicates that the cause was fairly tried in the court below. and. finding no reversible error upon the record, the judgment *nisi* should be affirmed. It is so ordered. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.